*In re: Anthony D. Walker and Denicia P. Walker*, Misc. No. 8, September Term 2020. Opinion by Hotten, J.

**CERTIFIED QUESTION OF LAW – STATUTORY INTERPRETATION – LIENS**

The United States Bankruptcy Court for the District of Maryland requested the Court of Appeals of Maryland to answer the following certified question:

> Can a community association's lien perfected under the Maryland Contract Lien Act, Md. Code Ann., Real Property ("Real Prop.") §§ 14-201[–206] secure unpaid damages, costs of collection, late charges, and attorney's fees arising under the association's governing documents that accrue subsequent to the recordation of the lien?

Pursuant to Md. Code Ann., §§ 12-601–613 of the Courts and Judicial Proceedings Article, the Court of Appeals of Maryland answered the certified question in the negative. The Court of Appeals held that the Maryland Contract Lien Act, Real Prop. §§ 14-201–206 does not permit a lien that secures unpaid damages, costs, charges, and fees which accrue after the recordation of the lien, otherwise known as a continuing lien. The Court of Appeals determined that the Maryland Contract Lien Act's plain text, legislative history, relevant case law, and comparison with other statutes precluded community associations from using a continuing lien to secure debts, as a matter of law.

United States Bankruptcy Court
for the District of Maryland
Case No. 18-23752-NVA
Argued: February 4, 2021

IN THE COURT OF APPEALS

OF MARYLAND

Misc. No. 8

September Term, 2020

_____

IN RE: ANTHONY D. WALKER AND
DENICIA P. WALKER

_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Biran,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: March 30, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The Maryland Uniform Certification of Questions of Law Act,[1] Maryland Code, §§ 12-601–613 of the Courts and Judicial Proceedings Article ("Cts. & Jud. Proc.") empowers this Court to "answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in a pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State." Cts. & Jud. Proc. § 12-603. This Court has been asked to answer the following certified question of law by the United States Bankruptcy Court for the District of Maryland ("the Bankruptcy Court"):

> Can a community association's lien perfected under the Maryland Contract Lien Act, Md. Code Ann., Real Property. ("Real Prop.") §§ 14-201[–206] secure unpaid damages, costs of collection, late charges, and attorney's fees arising under the association's governing documents that accrue subsequent to the recordation of the lien?

> We answer this question in the negative. For reasons to be explained, we hold that the Maryland Contract Lien Act ("MCLA") does not permit liens that secure unpaid damages, costs, charges, and fees which accrue after the recordation of the lien.

---

[1] [The] Maryland [General Assembly] adopted the first version of the Uniform Certification of Questions of Law Act in 1972 as part of a uniform code promulgated by the Uniform Law Commission (also known as the National Conference of Commissioners on Uniform State Laws) and codified the Act as Article 26 §§ 161 to 172. 1972 Md. Laws, ch. 427. The following year, Article 26 was recodified as the [Cts. & Jud. Proc.] Article. 1973 Md. Laws 1st Spec. Sess., ch. 2. In 1995, the Uniform Law Commission issued a new model Certification of Questions of Law statute, which Maryland then adopted in 1996. 1996 Md. Laws, ch. 344. The Maryland Uniform Certification of Questions of Law Act is currently codified at [Cts. & Jud. Proc.] §§ 12-601 to 12-613, Maryland Code (1973, 2020 Repl. Vol.).

*United Bank v. Buckingham*, Misc. No. 1, Sept. Term, 2020, 2021 WL 865246, at *1 n.1 (Md. Mar. 9, 2021).

**FACTUAL AND PROCEDURAL BACKGROUND**

In accordance with Cts. & Jud. Proc. § 12-605(a), "the court certifying a question

of law" to this Court "shall issue a certification order." Pursuant to Cts. & Jud. Proc. § 12-

606(a)(2), the certification order must contain "[t]he facts relevant to the question, showing

fully the nature of the controversy out of which the question arose[.]" We accept the facts

provided by the certifying court, *Price v. Murdy*, 462 Md. 145, 147, 198 A.3d 798, 799

(2018), and supplement with additional facts as necessary.

### *The Underlying Incident*

Appellee and debtor, Denicia P. Walker,[2] purchased a unit at the Long Reach Knolls

Condominium, Inc. ("Appellant") in Columbia, Maryland. Walker formally accepted the

deed on June 30, 2000. Appellant serves as the governing body of the condominium unit

owners. Unit owners must adhere to Appellant's bylaws and the Maryland Condominium

Act ("MCA"), Real Prop. §§ 11-101–143.[3] Appellant's bylaws require unit owners to pay

monthly "assessments" or fees, which Appellant uses to cover common expenses,

including insurance, landscaping, property management, and improvement of common

areas.

---

[2] Denicia Walker married co-debtor Anthony D. Walker after she purchased the property. An ownership interest was never conveyed to Anthony Walker.

[3] "In exchange for the benefits of owning property in common, condominium owners agree to be bound by the rules governing the administration, maintenance, and use of the property." *Ridgely Condominium Ass'n, Inc. v. Smyrnioudis*, 343 Md. 357, 359, 681 A.2d 494, 495 (1996) (footnote omitted). Condominium rules and bylaws must conform with the MCA, which "regulates the formation, management, and termination of condominiums in Maryland." *Id.* at 360, 681 A.2d at 495.

Walker defaulted multiple times on her monthly assessments. While Appellant has never restricted Walker's access to common areas, it recorded eight liens against Walker's unit between December 31, 2002, and April 4, 2014. The liens secured unpaid assessments, interest, and attorney's fees. Appellant also obtained three personal judgments against Walker during this time span.

On October 6, 2015, Appellant notified Walker of its intent to record a ninth lien against her unit to secure unpaid assessments, interest, and attorney's fees arising on or after January 1, 2015. The lien notice stated that it would secure $4,702.80 in unpaid damages owed as of October 6, 2015, "plus all sums becoming due thereafter[.]" Walker neither paid the owed amount nor challenged the intended lien. Appellant recorded its ninth lien on December 22, 2015 and obtained a fourth personal judgment against Walker in the District Court of Maryland for Howard County on August 9, 2016. The court entered a judgment of $13,933.99 against Walker, which included unpaid assessments from January 1, 2014 through December 31, 2016.

### Legal Proceedings

Walker filed for Chapter 13 bankruptcy relief on January 12, 2017. The Bankruptcy Court denied Walker's Chapter 13 plan without leave to amend on August 17, 2017 and dismissed Walker's case on September 8, 2017. Walker paid four monthly assessments between January and September 2017. Walker filed a second petition for Chapter 13 bankruptcy on September 11, 2017. The Bankruptcy Court denied Walker's Chapter 13 plan without leave to amend on September 24, 2018. The Bankruptcy Court dismissed the

3

second petition on October 16, 2018. Walker paid three monthly assessments during the pendency of the second petition.

Walker filed a third petition for Chapter 13 relief on October 16, 2018. Appellant filed proof of a secured claim for $42,298.89 on October 31, 2018.[4] This amount partly consisted of assessments, interest, and other costs that did not accrue until after Appellant recorded its ninth lien.

Walker objected to Appellant's proof of secured claim on August 5, 2019. Walker asserted that the MCLA does not permit a lien to secure assessments, costs of collection, and attorney's fees that accrue following the recordation of the lien. Appellant filed a response on August 29, 2019. The parties agreed to petition the Bankruptcy Court to certify the instant question to this Court. The parties also agreed to a joint stipulation of facts and documents on February 19, 2020. At the time of the joint stipulation, Walker had not paid a monthly assessment since August 29, 2019. According to Appellant, Walker resumed making monthly payments beginning April 28, 2020, but remains in default of her post-bankruptcy petition assessments. The Bankruptcy Court ordered certification on September 23, 2020.

---

[4] A proof of secured claim indicates the amount of secured debt that the debtor owed a creditor on the date of the bankruptcy filing. When calculating the total debt owed, the United States Bankruptcy Court, Official Form 410, part 2:7, permits creditors to include "in addition to [the] principal amount, . . . interest, fees, expenses, or other charges[.]" Fed. R. Bankr. P. 3001(c)(2)(A). Walker owed Appellant a principal judgment balance of $24,205.89 at the time of bankruptcy filing. Appellant added $18,093.00 to this claim, reflecting subsequent delinquent assessments, interest, attorney's fees and costs that accrued subsequently to the lien's recordation, for a total secured claim of $42,298.89.

4

*Standard of Review*

This Court may answer a question of law certified by a federal court if "the answer may be determinative of an issue . . . in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State." *Fangman v. Genuine Title, LLC*, 447 Md. 681, 690, 136 A.3d 772, 777 (2016) (citing Cts. & Jud. Proc. § 12-603). This Court cabins its review of certified questions to issues of Maryland law, not to issues of fact. *Parler & Wobber v. Miles & Stockbridge*, 359 Md. 671, 681, 756 A.2d 526, 531 (2000). This Court "may go no further than the question certified." *Price*, 462 Md. at 147, 198 A.3d at 799 (quoting *AGV Sports Grp., Inc. v. Protus IP Solutions, Inc.*, 417 Md. 386, 389 n.1, 10 A.3d 745, 746 n.1 (2010)).

The certified question of law concerns the interpretation of the MCLA. Statutory interpretation requires ascertaining and effectuating the intent of the General Assembly. *Montgomery County v. Phillips*, 445 Md. 55, 62, 124 A.3d 188, 192 (2015). We review questions of statutory interpretation under a *de novo* standard of review without deference to other courts' interpretation of the statute. *Harvey v. Marshall*, 389 Md. 243, 257, 884 A.2d 1171, 1179 (2005) (citing *Mohan v. Norris*, 386 Md. 63, 66-67, 871 A.2d 575, 577 (2005)).

*Parties Contentions*

According to Appellant, as long as a lien complies with the procedural requirement for creation under the MCLA, a lien can secure unpaid damages that arise after the

recordation of the lien.[5]  In short, Appellant argues that the MCLA permits continuing liens.[6]

For Appellant, the strongest support for continuing liens comes from the plain text of the statute, which neither prohibits continuing liens, nor requires a lienholder to impose a new lien to secure additional unpaid damages that arise after a lien's recordation. According to Appellant, finding a prohibition against continuing liens in the MCLA would impermissibly require the insertion of new language "as to reflect an intent not evidenced in the plain and unambiguous language of the statute[.]"  *Woznicki v. GEICO Gen. Ins. Co.*, 443 Md. 93, 108, 115 A.3d 152, 161 (2015) (quoting *Stickley v. State Farm Fire & Cas. Co.*, 431 Md. 347, 358-59, 65 A.3d 141, 148 (2013)).

Appellant also notes that this Court has never held that the MCLA requires multiple liens to secure unpaid sums arising from a single contract.  Instead, the past cases of this Court have focused on the purpose of the MCLA in creating a framework for recording and enforcing liens that accord with the minimum requirements of due process.  *See, e.g.*, *Golden Sands Club Condo., Inc. v. Waller*, 313 Md. 484, 495, 545 A.2d 1332, 1337-38

---

[5] These subsequent damages must also be provided by contract, governing bylaws, or statute.

[6] The Supreme Court defined a continuing lien as one "cover[ing] property or rights to property in the delinquent's hands at any time prior to expiration."  *Glass City Bank of Jeanette, Pa. v. United States*, 326 U.S. 265, 267, 66 S. Ct. 108, 110 (1945).  A continuing lien, in the context of a condominium association lien, constitutes not only the amount claimed in the lien, but the aggregate of unpaid charges, fees, and interest that have accrued since its recordation.  *See Bd. of Mgrs. of Netherlands Condo. v. Trencher*, 128 A.D.3d 452, 453, 9 N.Y.S.3d 213, 214 (1st Dept. 2015) ("plaintiff is entitled to not only the amount claimed in the lien, but also *the amount of unpaid common charges and fees that have accrued since the filing of the lien*[.]") (emphasis added).

6

(1988) ("We hold that procedural due process does not prevent the approach to hearing which the [General Assembly] has taken [under the MCLA].  In balancing the interests of the parties, the General Assembly has looked to economy, efficiency, and minimal involvement of the judiciary.  At the same time, it has given *the unit owner a reasonably simple and not unduly expensive way* to secure a hearing and judicial action as prerequisites to the creation of a lien on the unit.") (emphasis added).

Appellant contends that a continuing lien satisfies the minimum requirements of due process outlined by this Court in *Golden Sands* because continuing liens conserve time and expense for unit owners, condominiums, and the judiciary without increasing the risk of erroneous deprivation of the unit owner's property.  *See id.* at 495, 545 A.2d at 1338 (citing *Matthews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976)) ("[D]ue process generally requires consideration of three distinct factors: [f]irst, the private interest that will be affected . . . second, the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards; and finally, . . . the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.").  The interest of a council of unit owners would be furthered by conserving time and expense in filing multiple liens.  A continuing lien also protects the interests of the entire condominium because it ensures that accruing costs and interests from a delinquent unit owner are covered by a single lien.  Unit owners meanwhile would still receive prior notice and an opportunity to challenge putative charges in a formal proceeding before the lien is recorded.  Requiring successive liens would not in any meaningful way decrease the

7

risk of erroneous deprivation of a unit owner's property interests compared to a continuing lien.

Appellant argues that prohibiting continuing liens could produce absurd results and deleterious consequences for both condominium associations as a whole and individual unit owners. *See Blue v. Prince George's County*, 434 Md. 681, 689, 76 A.3d 1129, 1133 (2013) ("An examination of interpretive consequences, either as a comparison of the results of each proffered construction, or as a principle of avoidance of an absurd or unreasonable reading, grounds the court's interpretation in reality."). The prohibition of continuing liens would subject the lienholder and property owner to unnecessary time and expense of additional proceedings. These proceedings could lead to contradictory results. Less sophisticated parties, or those with financial constraints, may incur greater hardship when trying to comply with the multiple lien requirement. According to Appellant, prohibiting continuing liens would increase the fiscal and administrative burdens on the council of unit owners, and any other party subject to the MCLA's lien procedures.

Appellant also urges this Court to rely on non-Maryland authority to resolve this undecided question of Maryland law. Appellant cites *Archie v. Nagle & Zaller, P.C.*, No. GJH-17-2524, 2018 WL 3475429 (D. Md. Jul. 19, 2018), in which the United States District Court for the District of Maryland stated in an unreported memorandum opinion that prohibiting continuing liens, under the MCLA, "would be bizarre [and] idiosyncratic and not tenable[]" because it would require a creditor to file a new lien every time an additional cost accrued. *Id.* at *6 (internal quotation and citation omitted).

8

Appellant also cites to a line of cases from New York, culminating in a 2015 intermediate appellate court decision, that concluded the equivalent New York condominium association lien statute permits continuing liens. *Trencher*, 128 A.D.3d at 453, 9 N.Y.S.3d at 214; *see also Bd. of Managers of Soho Greene Condo. v. Clear, Bright & Famous LLC*, 2012 N.Y. slip op. 33273(U) (Trial Order), 2012 WL 5877658 (N.Y. Sup. Ct. Nov. 5, 2012) ("To read into this statute, as has been suggested, a requirement that the board of managers update its liens monthly in order to protect additional amounts accruing each month would be an interpretation which would be costly, burdensome and contrary to the . . . legislative objective.").

Walker argues that the MCLA prohibits any sum from being secured by a statutory lien before the property owner has an opportunity to contest the sum prior to attachment. According to Walker, continuing liens are prohibited by the plain language, legislative history, and due process requirements previously recognized by this Court.

Walker contends that the plain language of the MCLA excludes continuing liens because it enumerates an exhaustive and bounded list of payment categories that may be secured by a lien, namely damages, costs, late charges, and attorney's fees. According to Walker, the plain language of the statute only covers these payment categories when they are actually due. A continuing lien impermissibly stretches the meaning of the statutory language because it would cover payments that are not actually due. As future sums, they have not yet, nor may ever, become due.

According to Walker, continuing liens would contravene the purpose of the MCLA, which was amended by the General Assembly to conform with due process and ensure

9

debtors have the right to contest amounts allegedly owed. The Senate hearings indicated that debtors must have an opportunity to challenge a debt *before* the lien attaches. A continuing lien would circumvent the purpose of the statute because it would deny debtors the opportunity to challenge the precise amounts owed *before* the recordation of the lien. Walker also asserts that a continuing lien conflicts with the precedent of this Court. In *Golden Sands*, this Court upheld the constitutionality of the MCLA because "no lien attaches *until after* the unit owner has *an opportunity to be heard* . . . the lien claimant has the burden of proof . . . these provisions give the necessary opportunity for hearing and provide a reasonable procedure for testing the validity of the lien *prior to its creation*[.]" 313 Md. at 493, 545 A.2d at 1337 (emphasis added). Walker maintains that this Court underscored again, in *Select Portfolio Servicing, Inc. v. Saddlebrook West Utility Company, LLC*, 455 Md. 313, 167 A.3d 606 (2017), the importance of unit owner's ability to challenge putative costs *before* the lien is imposed. *Id.* at 336, 167 A.3d at 619 ("Under the [MCLA], . . . no lien attaches until after the [property] owner has an opportunity to be heard."). A continuing lien contradicts this Court's previous decisions that upheld a debtor's due process right in being able to challenge the amount of debt putatively owed before the governing body of a condominium records a lien.

*Analysis of the MCLA*

**A. Overview of Maryland Statutory Liens and the MCLA**

Legislatures have the power, subject to due process constraints, to authorize liens that secure payments, debts, or other obligations—like unit owner assessments—by statute. Hon. William Houston Brown & Lawrence R. Ahern, III, *The Law of Debtors and*

10

*Creditors: Bankruptcy, Security Interests, Collection* § 9:7 (Nov. 2020). The creation and enforcement of a statutory lien is entirely limited to and governed by its statutory terms. *MacBride v. Gulbro*, 247 Md. 727, 729, 234 A.2d 586, 588 (1967) (noting that when a statute "creates a cause of action which did not exist at common law, [it is] in derogation of the common law [and thus] is to be strictly construed."). Maryland courts construe statutory liens "strictly" in favor of the debtor to protect a debtor's common law rights. *Patapsco Trailer Serv. & Sales, Inc. v. Eastern Freightways, Inc.,* 271 Md. 558, 564, 318 A.2d 817, 820 (1974); *T.R. Ltd. v. Lee*, 55 Md. App. 629, 635, 465 A.2d 1186, 1191 (1983) ("Consent being an important element of a common law lien, any statutory attempt to create such lien without the element of consent would have to be strictly construed in derogation of the common law.").

A corollary of this Court's strict interpretation of statutory liens is that a court cannot create or impose a lien itself based on what it considers just in a particular case. *See Equitable Trust Co. v. Imbesi*, 287 Md. 249, 271, 412 A.2d 96, 107 (1980) ("[t]he creation of a lien is an affirmative act, and the intention to do such act [cannot] be implied from an express negative.").

The General Assembly enacted the MCLA, in part, for condominiums and their council of unit owners to secure the payment of assessments with a lien. Real Prop. § 14-202(a)(1) ("A lien on property may be created by a contract and enforced under this subtitle if: [] The contract expressly provides for the creation of a lien[.]"). The MCLA gives condominium associations "limited senior priority" over first recorded mortgage liens to ensure condominium associations receive some financial recoupment after a unit owner

11

defaults. Grahame K. Wells, *The Use of Super-Liens to Promote Cooperation Between Condominium Associations and Lenders*, 13 Ann. Rev. Banking L. 477, 479 (1994).

Prior to the MCLA, when a condominium unit owner defaulted, the mortgage lender would ordinarily have first priority in a foreclosure and would acquire all of the debtor's assets—leaving nothing for the condominium association. In response, Maryland, along with most states, created a statutory lien (sometimes called a "super lien") that enabled condominium associations to jump the foreclosure line and deduct some delinquent assessments and related costs from the sale proceeds. Real Prop. § 11B-117(c) (creating a super lien for a portion of unpaid unit owner assessments). In sum, the MCLA created a shortcut for condominium associations to recover delinquent unit owner assessments by placing a lien on the unit owner's unit.

The parties dispute whether the MCLA grants a different type of legislative shortcut for condominium associations: whether the MCLA permits continuing liens—i.e., the securing of damages, fees, and interest that arise after the recordation of the lien. As we shall explain, the MCLA does not permit continuing liens. The plain text and legislative history of the statute, as well as relevant case law of the statute, both from Maryland and our sister jurisdictions, support our conclusion.

**B. Statutory Interpretation of the MCLA**

The first indication that the MCLA prohibits continuing liens comes from the statutory text itself. "The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the [General Assembly]. . . . To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the statute." *State*

12

*v. Bey*, 452 Md. 255, 265, 156 A.3d 873, 878 (2017). "[T]he plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the [General Assembly] in enacting the statute." *Id.* at 266, 156 A.3d at 878. "Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process." *Id.*, 156 A.3d at 879.[7]

Real Prop. § 14-202(b) provides the four types of payments that may be secured by a lien provided for by contract:

> A lien may *only secure* the payment of:
> (1) Damages;
> (2) Cost of collection;
> (3) Late charges permitted by law; and
> (4) Attorney's fees provided for in a contract or awarded by a court for breach of contract.

(Emphasis added).

While the plain text of Real Prop. § 14-202 does not prohibit continuing liens, *Archie v. Nagle & Zaller*, P.C., 790 F. App'x 502, 505 (4th Cir. 2019) (*per curiam*), the term "only" clearly limits the four types of payments that may be secured by a lien: "(1)

---

[7] This Court also will construe a statute so "as to avoid a conflict with the Constitution whenever that course is reasonably possible." *Koshko v. Haining*, 398 Md. 404, 425-26, 921 A.2d 171, 183 (2007) (quoting *In re James D.*, 295 Md. 314, 327, 455 A.2d 966, 972 (1983)).

13

Damages; (2) Cost of collection; (3) Late charges permitted by law; and (4) Attorney's fees provided for in a contract or awarded by a court for breach of contract." Real Prop. § 14-202(b). The circumscribed list demonstrates the legislature's intent in restricting the scope of payments secured by liens. Within this bounded list, Real Prop. § 14-202(b) notably omits mention of payments that accrue *subsequent* to the lien's recordation. Construing Real Prop. § 14-202(b) to authorize a continuing lien would cut against the limiting language used by the General Assembly and impermissibly require the insertion of additional statutory language. *Woznicki*, 443 Md. at 108, 115 A.3d at 161.

A continuing lien also contradicts the time-limited definition of "Damages" provided in the statute. Real Prop. § 14-201(c)(1) defines "Damages" as "unpaid sums *due under contract*, plus interest accruing on the *unpaid sums due under a contract* or as provided by law, including fines levied under the Maryland Condominium Act or the Maryland Real Estate Time-Sharing Act." (Emphasis added). The definition of damages plainly limits payments that may be secured by the lien to those that are "due." A continuing lien would allow a condominium association to place liens on future damages that have not accumulated yet. Future, unaccumulated damages cannot logically be "due" at the time of the lien's recording.

For example, when Appellant recorded its ninth lien against Walker on December 22, 2015, it cannot be said, contrary to Appellant's assertion, that Walker's future assessments were *due* under contract. A continuing lien does not comport with a common sense reading of the plain text of the statute, and we decline to interpret the MCLA to allow a lien that is not grounded in the specific language chosen by the legislature. *Kushell v.*

14

*Dep't of Nat. Res.*, 385 Md. 563, 576-77, 870 A.2d 186, 193 (2005) ("A court may . . . [not] construe the statute with forced or subtle interpretations that limit or extend its application."); *5500 Coastal Highway Ltd. P'ship v. Elec. Equip. Co., Inc.*, 305 Md. 532, 536, 505 A.2d 533, 535 (1986) ("It follows, therefore, that there can be no lien for anything which does not fall within the statutory provision.").

Reading Real Prop. § 14-202 in context with the broader statute lends additional support to our interpretation. "[W]e analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect." *Kushell*, 385 Md. at 577, 870 A.2d at 193. Real Prop. § 14-204(d)(2) provides in pertinent part:

> [A] governing body [i.e., council of unit owners] may foreclose on a lien against a unit owner or lot owner *only if the damages secured by the lien*:
>
> (i) Consist of:
>
>> 1. Delinquent periodic assessments or special assessments and any interest; and
>>
>> 2. Reasonable costs and attorney's fees *directly related to the filing of the lien* that do not exceed the amount of the delinquent assessments, excluding any interest; and
>
> (ii) Do not include fines imposed by the governing body or attorney's fees or costs related to recovering the fines.

(Emphasis added).

The language "directly related to the filing of the lien" suggests that recoverable costs and fees must cover the cost of creating and enforcing the lien, not future costs and fees that may eventually spring from the lien. It would untenably stretch the meaning of

15

"directly related to" if the lien could encompass costs and fees that accumulate years after the lien is recorded.[8]  While the statute does not expressly prohibit continuing liens, its language read in its entirety, restricts damages only to those accrued at the time of recording the lien.

We are not persuaded by Appellant's argument that because the plain text does not prohibit continuing liens, condominium associations may secure costs and fees that arise after a lien is recorded with proper notice.[9]  Appellant finds support of its argument in *Archie v. Nagle & Zaller, P.C.*, 790 F. App'x 502 (4th Cir. 2019), an unreported *per curiam*

---

[8] The General Assembly could have used different language if it had intended to permit reasonable costs and attorney's fees that accumulate *subsequent* to the lien's recordation.  The equivalent condominium association statute in Oregon, for example, omits any limiting language and permits the lien to continue indefinitely.  Or. Rev. Stat. Ann. § 100.450(1) ("Whenever an association of unit owners levies any assessment against a unit, the association of unit owners shall have a lien upon the individual unit. . . .  The lien includes interest, late charges, attorney fees, costs or other amounts levied under the declaration or bylaws.") & (2)(d) ("as long as the original or any *subsequent* unpaid assessment remains unpaid, the unpaid amount of assessments *automatically continue* to accumulate with interest *without the necessity of further recording*") (emphasis added).

[9] Appellant notes that this argument, also known as the negative implication canon of construction, has been used many times before by this Court in aid of its statutory interpretation.  *Walzer v. Osborne*, 395 Md. 563, 574 n.6, 911 A.2d 427, 433 n.6 (2006) (acknowledging that this Court has extensively employed the negative implication canon in its case law, embodied in the maxim *expression unius est exclusion alterius*—"to express or include one thing implies the exclusion of the other, or of the alternative").  For the reasons we have previously stated, we decline to apply the negative implication canon to the interpretation of the MCLA in this case.  *See S.E.C. v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 350, 64 S. Ct. 120, 123 (1943) ("However well these rules [of statutory construction] may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy.") (footnote omitted).

decision from the Fourth Circuit. In *Archie*, the Fourth Circuit affirmed the United States District Court for the District of Maryland that held a condominium association's continuing lien was not prohibited under Maryland law, or at the very least, was not a violation of the Fair Debt Collection Practices Act—the relevant federal statute in the case. *Id.* at 505-06 ("[The condominium association's] conduct – 'pursuing its clients' contractual rights in a way that was not proscribed' under state law – did not amount to a violation of the [Fair Debt Collection Practices Act]."). The district court reasoned that because the unit owner signed the condominium association's governing documents, the unit owner was "on notice that the amount of the lien may change, and also on notice as to exactly what those costs may be." *Id.* at 505 (internal quotations omitted). The Fourth Circuit approved of the district court's reasoning that the MCLA must tolerate continuing liens otherwise the statute "would lead to an impractical and costly result, with creditors obliged to file a new lien every time an additional cost accrued or a partial payment was made." *Id.*

The *Archie* opinion has minimal persuasive weight in the determination of this certified question. The opinion is unreported and comes from a different jurisdiction. The Fourth Circuit mostly repeats the district court's decision, which did not analyze the language of the MCLA, did not consult the legislative history of the statute, and did not cite any of the Maryland cases on the statute. The Fourth Circuit, in affirming the district court on appeal, explained that the district court's dismissal of state law claims left the issue of MCLA interpretation open for Maryland courts to resolve. *Id.* at 506 n.3

17

("allowing state courts to decide any remaining state law claims in this case would 'best accommodate the values of economy, convenience, fairness, and comity.'").[10]

We are also not persuaded by Appellant's argument that interpreting the MCLA to prohibit continuing liens would lead to impractical results. This Court explained in *Select Portfolio* that the MCLA's lien procedure did not harm the condominium association's or future creditors' interests. By recording a lien, the condominium association has already put future creditors on notice that the property is encumbered. 455 Md. at 327, 167 A.3d at 614 ("Discovery of a recording . . . might prompt further inquiry into whether payment of the assessment was current."). The MCLA also established a quick and formulaic way to record liens under the statute, so requiring additional liens to secure future costs and fees (after they become due) would not impose an undue burden on condominium associations. The statute includes a short template for creditors to fill in the blanks and quickly file. Real Prop. § 14-203.[11] It only asks for (1) the unit address, (2) the name of the unit owner, (3)

---

[10] Even if it was necessary to examine *Archie*'s discussion of the MCLA on the merits, we do not find the district court's reasoning persuasive here. As we have previously noted, the district court did not directly address the MCLA in its analysis, rather framing its brief discussion of the statute in the context of the Federal Debt Collection Practices Act ("FDCPA"). According to the district court, the defendant's continuing lien did not violate the FDCPA because it "was not proscribed by the MCLA." *Archie*, 2018 WL 3475429, at *6. We offer no opinion as to whether the continuing lien in *Archie* may have violated the FDCPA, but as we have explained in the context of the mechanic's lien statute, "there can be no lien for anything which does not fall within the statutory provision[]" and "[t]his Court has no power to extend the mechanic's lien law to cases beyond its obvious design and plain requirements." *5500 Costal Highway*, 305 Md. at 536, 505 A.2d at 535. A condominium association may not secure future debts through a lien merely because the MCLA is silent on the issue.

[11] The "Statement of Lien" included in the statute provides, in its entirety:

(continued…)

18

the signature of the creditor, and (4) the amount of debt owed *at the time of recording*. After recording the short document within the land records, the condominium association has established a valid lien.

Admittedly, a continuing lien would make the process for securing delinquent payments more expedient for condominium associations. In this case, Appellant would have been able to secure, by operation of statute, delinquent assessments that had accrued since the last recorded lien. The countervailing interest of expediency does not withstand practical experience or judicial scrutiny. Appellant's own actions reveal that routinely recording liens is not too burdensome. Appellant has already recorded *nine* different liens against Walker. Our case law has also recognized the preference of the General Assembly for protecting a unit owner's constitutional rights over expedience. *Id.* at 335-36, 167 A.3d at 619; *Golden Sands*, 313 Md. at 493, 545 A.2d at 1337 ("no lien attaches until after the unit owner has an opportunity to be heard. . . . The court may not order a lien imposed unless it finds that probable cause exists to establish a lien[.]") (internal citation omitted).

---

(…continued)

This is to certify that the property described as _____ is subject to a lien under Title 14, Subtitle 2 of the Real Property Article, Maryland Annotated Code, in the amount of $_____. The property is owned by _____.

I hereby affirm under the penalty of perjury that notice was given under § 14-203(a) of the Real Property Article, and that the information contained in the foregoing statement of lien is true and correct to the best of my knowledge, information, and belief.

_____
(name of party claiming lien)

Real Prop. § 14-203(j)(1).

19

The plain language of Real Prop. § 14-202 limits sums that can be secured by the lien to unpaid damages, costs, and fees *due* under contract. A continuing lien would sweep future damages, costs and fees that have yet, and may never materialize into the lien's scope. Such an outcome is not supported by the plain text of the statute.

## C. Legislative History

The prohibition of continuing liens by the MCLA garners further support from the statute's legislative history. "Enacted in 1985, the MCLA was established as a direct result, and in response to, the 1985 Court of Special Appeals unreported opinion in *Surfside 84 Condominium Council of Unit Owners v. Mullen*, No. 495, Sept. Term 1984 (Md. Ct. Spec. App. Jan. 28, 1985).[12] The purpose of the MCLA was to 'establish procedural rules that comported with due process for establishing, enforcing, or denying a lien based on a contract.'" *In re Stein Props., Inc.*, 598 B.R. 213, 218 (Bankr. D. Md. 2019) (quoting *Select Portfolio*, 455 Md. at 332, 167 A.3d at 617). The MCLA's predecessor had allowed the statement of the lien to be recorded within two years *after* the assessment came due. *Select Portfolio*, 455 Md. at 332, 167 A.3d at 616 (citing Real Prop. § 11-110(d)). The General Assembly amended the MCLA to prevent a lien's recordation until the unit owner received both *prior* notice and an opportunity to be heard. *Id.* at 336, 167 A.3d at 619 ("Under the [MCLA], . . . no lien attaches until after the [property] owner has had an opportunity to be heard. It would be completely at odds with that purpose to provide for the creation of a

---

[12] Even though the *Surfside 84* decision was unreported, the General Assembly moved quickly to address the procedural due process deficiencies identified by the Court of Special Appeals. *Select Portfolio*, 455 Md. at 332, 167 A.3d at 617 (citing Report of Senate Judicial Proceedings Committee concerning Senate Bill 625 (March 20, 1985)).

lien by virtue of a contract alone and exempt it from the procedures the statute created.")
(internal citation omitted).

A continuing lien appears similarly at odds with the legislative purpose of the MCLA because it deprives debtors of the opportunity to challenge the accrual of a finite amount of debt in a proceeding before the condominium association records the lien. In *Select Portfolio*, this Court dismissed the creditor's reading of the MCLA that it permitted "creation of a lien simply by virtue of the existence of a contract[,]" in part, because "[n]othing in the *legislative history* of the statute supports such a reading." *Id.* at 335, 336, 167 A.3d at 619 (emphasis added and footnote omitted). Similar to *Select Portfolio*, nothing in the legislative history of the MCLA demonstrates the intent of the General Assembly to permit continuing liens. The General Assembly amended the MCLA to better protect the due process rights of the *debtor*. Whether a continuing lien may also satisfy the minimum due process concerns expressed by the legislature in 1985 is irrelevant. The legislative history demonstrates that the General Assembly did not contemplate or evaluate continuing liens in amending the MCLA. When a continuing lien "is not only inconsistent with the structure and language of the [MCLA], but it is also at odds with the legislative history[,]" it is not permitted. *Id.* at 335, 167 A.3d at 619.

The desire of the General Assembly to model the MCLA on the mechanic's lien statute further demonstrates the MCLA's prohibition of continuing liens. *Id.* at 332, 167 A.3d at 617; *see also Golden Sands*, 313 Md. at 491 n.5, 545 A.2d at 1336 n.5 ("Although the 1985 enactment . . . is not a clone of the 1976 Mechanic's Lien Law, there is enough similarity to suggest cousinship even if not parentage."). Like a condominium association

21

lien, a mechanic's lien is created by and limited to its statutory terms. *Southern Mgmt. Corp. v. Kevin Willes Const. Co., Inc.*, 382 Md. 524, 543, 856 A.2d 626, 637 (2004). The mechanic's lien statute requires prior notice before the lien's recordation, which should specify the kind of work or materials furnished, the expected date of completion and the *amount or sum due.*[13] *Welch v. Humphrey*, 200 Md. 410, 414, 90 A.2d 686, 687 (1952) ("It has always been held in Maryland that if notice is given to the owner of the property before the lien claim is filed, it should definitely state the intention of the claimant to claim the lien, and also fully and specifically state the particulars of the claim . . . and the *amount of the claim*.") (emphasis added). This Court has construed the mechanic's lien statute to prohibit a mechanic's lien from attaching to future indebtedness. *Dickerson Lumber Co. v. Herson*, 230 Md. 487, 493, 187 A.2d 689, 692 (1963). It follows that the MCLA would similarly require advanced notice to challenge the proposed amount or sum due before recordation of the lien.

The conscious omission of continuing liens in the MCLA by the General Assembly becomes more apparent when juxtaposed against other titles within the Maryland Code. The General Assembly has authorized liens that are "continuing" in different kinds of commercial transactions. *See, e.g.,* Md. Code Ann., Commercial Law ("Com. Law") § 15-602(a) ("When an attachment is levied against the wages of a judgment debtor, it shall

---

[13] Similar to the boilerplate "Statement of Lien" provided in Real Prop. § 14-203, *see supra* note 11, the mechanic's lien statute also provides a boilerplate "Intention to Claim a Lien" form that states in pertinent part: "The total amount earned under the subcontractor's undertaking to the date hereof is $___ of which $___ is due and unpaid as of the date hereof." Real Prop. § 9-104. This form indicates that the lien covers only a fixed, ascertainable amount *due before* the lien is created.

constitute a lien on all attachable wages that are payable at the time attachment is served *or which become payable* until the judgment, interest, and costs, as specified in the attachment, are satisfied.") (emphasis added). Unlike with the MCLA, the plain text of Com. Law § 15-602(a) explains that the lien covers payments both at the time of attachment and *in the future*. If the General Assembly had intended for the MCLA to permit continuing liens, as an expedient mechanism for securing future condominium association costs and fees, it could have said so in the statute.[14]

## D. Other Authority

We find further support in our interpretation of the MCLA by turning to how other jurisdictions have treated the issue of continuing liens. While appellate courts across the country have reached different conclusions as to the validity of continuing liens, each case confirms that the outcome depends on the particular text, legislative purpose and history, and case law of the respective jurisdiction. A United States Bankruptcy Appellate Panel of the Ninth Circuit exemplified this kind of jurisdiction-specific analysis of continuing liens in *In re Basave De Guillen*, 604 B.R. 826 (B.A.P. 9th Cir. 2019). In *De Guillen*, a condominium association attempted to secure a continuing lien under a California state

---

[14] Other states have expressly permitted "continuing liens" in their statutory language as well. *See* N.D. Cent. Code Ann. § 32-09.1-21 (West 2020) (Continuing lien on wages); Wash. Rev. Code Ann. § 6.27.330 (2020) (Continuing lien on earnings—Authorized); S.D. Codified Laws § 9-43-100 (2020) ("Any special assessment lawfully levied upon real property assessed pursuant to this chapter is a continuing lien on the property as against all persons except the United States and this state. The lien continues for fifteen years from the due date of the last installment.").

statute[15] with requirements substantially similar to the MCLA. *Id.* at 830. The court held

that the statute authorizing a lien on unit owner assessments "does not provide for a

continuing lien, and case law is scant regarding whether the Act may be fairly interpreted

as so providing." *Id.* at 833. "To hold otherwise would offend the comprehensive notice

scheme and homeowners' rights to contest delinquent assessments as established in the

[statute]." *Id.* at 834.

The *De Guillen* court's analysis appears particularly persuasive in this case because

the text and legislative history of Cal. Civ. Code § 5675 parallels the text and legislative

history of Real Prop. § 14-204. Both statutes permit liens on uncollected assessments, late

charges and fees, but *omit reference to continuing liens*. The legislative history underlying

each statute reflects that both were intended to protect the due process rights of unit owners

and *limit what condominium associations can secure in a recorded lien*. The *De Guillen*

court similarly found no California case law that authorized continuing liens. In sum, the

_____

[15] Cal. Civ. Code § 5675 provides in pertinent part:

(a) The *amount of the assessment, plus any costs of collection, late charges, and interest assessed* in accordance with subdivision (b) of Section 5650, *shall be a lien on the owner's separate interest in the common interest development from and after the time the association causes to be recorded with the county recorder of the county in which the separate interest is located*, a notice of delinquent assessment, which shall state the amount of the assessment and other sums imposed in accordance with subdivision (b) of Section 5650, a legal description of the owner's separate interest in the common interest development against which the assessment and other sums are levied, and the name of the record owner of the separate interest in the common interest development against which the lien is imposed.

(Emphasis added).

24

court declined to read continuing liens into the statute when its plain text, legislative history and purpose, and relevant case law provided no basis to do so.

The jurisdiction-specific approach to analyzing the validity of condominium association liens also explains why the cases cited by Appellant are not persuasive. Some state legislatures intended to permit continuing liens,[16] while others, like Maryland, did not. Appellant cites to a line of cases in New York that most recently culminated in a state intermediate appellate court's ruling that permitted continuing liens. The New York appellate court reached an opposite conclusion than this Court because of notable differences in the respective statutory texts, legislative histories, and case law. *Trencher*, 128 A.D.3d at 453, 9 N.Y.S.3d at 214 (citing a line of cases dating back to 1978 that expressly approved of continuing liens in New York). Unlike the MCLA, which limits damages to those due under contract and directly relating to filing, the New York statute used broader language that supported a recognition of continuing liens:

> The board of managers, on behalf of the unit owners, shall have a lien on each unit *for the unpaid common charges thereof*, together with interest thereon. . . . Any grantor or grantee of a unit shall be entitled to a statement from the manager or board of managers, setting forth the amount of the unpaid common charges accrued against the unit, and neither such grantor

---

[16] Missouri's intermediate appellate court, for example, interpreted its equivalent condominium association statute to permit continuing liens. *Carroll v. Oak Hall Assocs., L.P.*, 898 S.W.2d 603, 607 (Mo. Ct. App. 1995) ("The Association's lien, then, arose when the common expense assessments became due and were unpaid. The first of the delinquent assessments was due January 1, 1988, *and each month's assessment since that date has remained unpaid and constitutes a lien on the respective units*.") (emphasis added). Other jurisdictions, such as Connecticut, permit continuing liens subject to parameters specified in the statute. *Lakeridge Ass'n, Inc. v. Lynch*, 51 Conn. L. Rptr. 530, 2011 WL 1087513, at *2 (Conn. Super. Ct. Feb. 23, 2011) (noting Connecticut's statute limits a condominium association's priority lien to six months of common charges plus fees and costs).

25

nor grantee shall be liable for . . . *any unpaid* common charges against such unit *accrued* prior to such conveyance[.]

N.Y. Real Prop. Law § 339-z (McKinney 2004) (emphasis added).

The New York legislature also articulated a different legislative purpose than the Maryland General Assembly when enacting the MCLA. In the New York legislature, the "overriding concern" was "that of ensuring the continued viability of the entire condominium project and protecting those who have invested substantial sums of their life savings from unit owners who have failed to pay their common charges." *Washington Fed. Sav. & Loan Ass'n v. Schneider*, 95 Misc. 2d 924, 929 (N.Y. Sup. Ct. 1978). The Maryland General Assembly presumably had this goal in mind too, but it *was not the "overriding concern*." Maryland's General Assembly weighed the rights of the condominium against a debtor's constitutional due process rights and achieved a different balance of interests than the New York legislature by requiring that Maryland debtors have an opportunity to challenge fixed sums in a lien before it is recorded.

## CONCLUSION

The plain text, legislative history, and case law relevant to the MCLA collectively demonstrate the intent of the General Assembly to prohibit continuing liens. We accordingly answer the certified question in the negative: Real Prop. §§ 14-201–206 does not secure unpaid damages, costs of collection, late charges, and attorney's fees that accrue subsequent to the recordation of the lien.

**CERTIFIED QUESTION OF LAW ANSWERED AS SET FORTH ABOVE. COSTS TO BE EQUALLY DIVIDED BY THE PARTIES.**

26