*William Price, et al. v. Ralph M. Murdy, et al.*, Misc. No. 1, September Term, 2018

**STATUTE OF LIMITATIONS – CJP § 5-102 – STATUTORY SPECIALTIES – MARYLAND CONSUMER LOAN LAW – LICENSING REQUIREMENT –** The licensing requirement of the Maryland Consumer Loan Law, Maryland Code, Commercial Law Article ("CL") § 12-302 (1975, 2013 Repl. Vol.), constitutes an "other specialty" within the meaning of § 5-102(a)(6) of the Courts and Judicial Proceedings Article, Maryland Code (1973, 2013 Repl. Vol.).  Actions on CL § 12-302 are therefore entitled to a twelve-year limitations period.

United States District Court for the District of Maryland
Case No. GLR-17-736
Argued: September 6, 2018

IN THE COURT OF APPEALS
OF MARYLAND

Misc. No. 1

September Term, 2018

WILLIAM PRICE, *et al.*

v.

RALPH M. MURDY, *et al.*

Barbera, C.J.,
Greene
*Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Opinion by Barbera, C.J.

Filed: December 18, 2018

* Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Md. Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

We are presented with a question of law certified by the United States District Court for the District of Maryland pursuant to the Maryland Uniform Certification of Questions of Law Act, §§ 12-601 to 12-613 of the Courts and Judicial Proceedings Article ("CJP"), Maryland Code (1973, 2013 Repl. Vol.). The question posed is whether a Maryland statute—here, the licensing requirement of the Maryland Consumer Loan Law, § 12-302 of the Commercial Law Article ("CL"), Maryland Code (1975, 2013 Repl. Vol.)—is a statutory specialty as contemplated by CJP § 5-102(a)(6). If an action is on a specialty, CJP § 5-102 provides that it "shall be filed within 12 years after the cause of action accrues." For the following reasons, we hold that CL § 12-302 is a statutory specialty and actions on it are accorded a twelve-year limitations period.

## I.

### Facts and Procedural History

Pursuant to the Maryland Uniform Certification of Questions of Law Act, CJP §§ 12-601 to 12-613, "we accept the statement of facts provided by the certifying court. We only 'answer questions of state law.'" *AGV Sports Grp., Inc. v. Protus IP Sols., Inc.*, 417 Md. 386, 389 n.1 (2010) (citations omitted). We may reformulate, under CJP § 12-604, a question of law certified to us, *TravCo Ins. Co. v. Williams*, 430 Md. 396, 402 (2013), but we "may go no further than the question certified." *AGV Sports*, 417 Md. at 389 n.1.

We adopt the following facts set forth in the certification order of the United States District Court for the District of Maryland:

> Two Plaintiffs, [Price and Chovan,] consumers who financed the
> purchase of automobiles through loans under $6,000, brought a putative class

action against the lender, Samuel Spicer,[1] for violations of the Maryland Consumer Loan Law ("MCLL"). Plaintiffs allege that Spicer was not licensed to enter into these loans under the MCLL. Plaintiffs further allege that Spicer violated the MCLL by: (1) failing to provide any notices related to repossession of cars; (2) charging and collecting compound interest; and (3) charging and collecting inflated or uncollectable attorneys' fees.

Plaintiffs claim that they entered into loans with Spicer while he was unlicensed, but all of the loan transactions occurred over three years before the instant lawsuit was filed on March 17, 2017. The general statute of limitations for civil actions is three years. CJP § 5-102(a)(6), however, provides a twelve-year statute of limitations for causes of action brought under a specialty statute:

> (a) An action on one of the following specialties shall be filed within 12 years after the cause of action accrues, or within 12 years from the date of the death of the last to die of the principal debtor or creditor, whichever is sooner:
>> (1) Promissory note or other instrument under seal;
>> (2) Bond except a public officer's bond;
>> (3) Judgment;
>> (4) Recognizance;
>> (5) Contract under seal; or
>> (6) **Any other specialty.**

Plaintiffs assert that the MCLL is an "other specialty," and therefore the twelve-year statute of limitations applies to their claims. Spicer, on the other hand, maintains that the MCLL is not a specialty, and therefore the three-year statute of limitations applies. As a result, Spicer contends, Plaintiffs' MCLL claims are time-barred.

(Emphasis in certification order) (internal citations and footnote omitted). The District

Court determined that the limitations issue involves a question of unresolved Maryland law

and, therefore, certified the following question to this Court:

Whether the MCLL § 12-302's licensing requirement is an "other specialty"

---

[1]  In addition to Spicer, Plaintiffs also sued Ralph M. Murdy for violations of the Maryland Consumer Debt Collection Act. On March 30, 2018, the District Court dismissed Plaintiffs' claims against Murdy. The District Court noted the dismissal of that defendant in its certification order. For purposes of proceedings in this Court, the plaintiffs have been designated as "Appellants" and Spicer has been designated as "Appellee."

2

subject to Maryland's twelve[-]year limitations period under [CJP] § 5-102(a)(6)?

(First alteration added).

## II.

### The Licensing Provision of the Maryland Consumer Loan Law: A Brief History

Maryland's licensing requirement for lenders of small loans dates to a 1912 Act. At that time, the General Assembly sought to protect consumers of small loans against far more than just usury: the Act, among other things, required licensing of "petty loan brokers," capped certain fees depending on the amount borrowed, and mandated disclosure of the loan's terms to the borrower. Ch. 836, 1912 Md. Laws 1621, 1621-24.

In 1918, the General Assembly replaced the 1912 law with "AN ACT to license and regulate the business of making [small] loans." Ch. 88, 1918 Md. Laws 197, 197. The law capped the interest rate for loans under $300 made by unlicensed lenders. *Id.* at 198. The Act's preamble identified the legislature's goals of "prohibiting false or misleading statements" regarding these loans, setting maximum interest rates and charges, and regulating wage garnishments. *Id.* at 197-98. The preamble further explained:

> The conduct of [the business of making small loans] has long been a cause of general complaint, and of much hardship and injustice to borrowers, and there is no regulation or provision[] of law which has proved effective for the protection of such borrowers and for the punishment of usurious money lenders . . . and there is a real need for the enactment of a law that will enable [the] continuance [of small loan lending] under proper supervision[.]

*Id.* at 198.

In 1945, the General Assembly created the Maryland Industrial Finance Law, ch. 932, 1945 Md. Laws 1438, 1453, to cover small loans, Md. Code Art. 11 §§ 165, 203

3

(1957, 1968 Repl. Vol.).  Its purpose was to provide "further remedial legislation regulating the lending of sums of money not presently regulated by existing laws."  *Id.* § 163.  The law required licensure or exemption from licensure for lenders of up to $1,500.  *Id.* § 165.  It also, among other things, governed the uniformity of monthly installment amounts, fee collection, and prepayment and any consequent refunding of interest.  *Id.* § 196.  The law did not repeal or otherwise affect the 1918 law's regulation of loans and lenders of under $300, which itself had been codified at Article 58A.  *Id.* § 166.  Article 58A provided parallel regulation until repealed in 1977.[2]

In 1975, the Maryland Industrial Finance Law was renamed the Maryland Consumer Loan Law ("MCLL"), and its credit provisions, including the licensing requirement at issue here, appeared in Subtitle 3 ("Consumer Loans – Credit Provisions") of Title 12 of the new Commercial Law Article.  Md. Code, CL §§ 12-301 *et seq.* (1975).  The Revisor's note for the licensing requirement makes clear that its obligations already existed:

> This subsection is new language derived without substantive changes from Article 11, § 165.  It is repeated here to note the general requirement of licensure for making of loans under this subtitle.  The specific licensing provisions are retained in the cited Maryland Consumer Loan Law – Licensing Provisions, Article 11, §§ 163 et seq. . . . .

*Id.* § 12-302.  The language of the licensing requirement is unchanged since enacted in 1975, save for substituting "the person" for "he" in 1980.  Ch. 33, 1980 Md. Laws 136,

---

[2] The Small Loan Law was repealed in 1977 "FOR the purpose of consolidating the laws of this State relating to small loans and consumer loans into a unified Maryland Consumer Loan Law."  Ch. 693, 1977 Md. Laws 2818, 2818.

4

727. CL § 12-302 of the MCLL now provides: "A person may not engage in the business of making loans under this subtitle unless the person is licensed under or is exempt from the licensing requirements of Title 11, Subtitle 2 of the Financial Institutions Article, the Maryland Consumer Loan Law – Licensing Provisions." Other sections of the MCLL govern the amount of interest, other charges, and deceptive and unfair practices. CL §§ 12-303 to 12-314 (1975, 2013 Repl. Vol.).

The MCLL does not specify a limitations period for actions on its provisions. The applicable limitations period, therefore, is governed by the relevant statute of limitations found in the CJP Article. Although CJP § 5-101 provides a "blanket" three-year limitations period, *NVR Mortg. Fin., Inc. v. Carlsen*, 439 Md. 427, 439-40 (2014), there are exceptions. One such exception is CJP § 5-102, which sets a twelve-year limitations period for an action on a specialty. The certified question asks this Court to determine whether the MCLL's licensing requirement constitutes an "other specialty," a category that we have previously deemed a "relatively narrow catchall," *Master Fin., Inc. v. Crowder*, 409 Md. 51, 70 (2009). In answering this question, we are guided by recent cases, beginning with *Crowder* itself.

## III.

### Discussion

#### *The* Crowder *Test and its Recent Application*

In *Crowder*, this Court laid out a test for determining whether a statute creates an "other specialty" under CJP § 5-102(a)(6):

An action based on a statute will constitute an "other specialty" subject to the

5

12-year period of limitations if (1) the duty, obligation, prohibition, or right sought to be enforced is created or imposed solely by the statute, or a related statute, and does not otherwise exist as a matter of common law; (2) the remedy pursued in the action is authorized solely by the statute, or a related statute, and does not otherwise exist under the common law; and (3) if the action is one for civil damages or recompense in the nature of civil damages, those damages are liquidated, fixed, or, by applying clear statutory criteria, are readily ascertainable.

*Crowder*, 409 Md. at 70. The *Crowder* plaintiffs brought their claim under the State Secondary Mortgage Loan Law ("SMLL"). *Id.* at 55. The SMLL, among other provisions, "defines a secondary mortgage loan"; prohibits lending under the SMLL, unless the person is licensed or exempt from licensing; "limits the amount of interest, fees, points, commissions, and other charges" for such loans; and "requires certain disclosures to certain borrowers." *Id.* at 58. The SMLL imposes civil and criminal penalties for violators. *Id.*

The *Crowder* Court applied its test to the SMLL and concluded that a loan made pursuant to that statute is an "other specialty":

(1) the duties, obligations, prohibitions, and rights sought to be enforced by the plaintiffs are created and imposed solely by the SMLL, (2) the remedy pursued—forfeiture of all interest and unlawfully assessed fees, or, in the class action cases, forfeiture of three times the amount of interest charged— is authorized solely by the SMLL, and (3) the ascertainment of those amounts is readily ascertainable.

*Id.* at 72. Regarding the ascertainment of the damages, we rejected in *Crowder* the notion that the need for a court to conduct factfinding meant that the amount was not *readily* ascertainable. *Id.* at 72 n.4 ("other[ issues] may well be resolved based on the relevant documents").

The *Crowder* test has been applied in two of this Court's opinions responding to

certified questions from a federal court.[3]

In the first *Crowder* application, we were asked whether the Maryland Telephone Consumer Protection Act ("MTCPA") is an "other specialty." *AGV Sports Grp., Inc. v. Protus IP Sols., Inc.*, 417 Md. at 389. We did not address in *AGV Sports* the parties' arguments regarding whether the MTCPA satisfies the first and third *Crowder* prongs because the statute's available remedies "disclose[] why it is not a specialty." *Id.* at 397. The MTCPA prohibits certain unauthorized use of automated telephone equipment such as the "unsolicited sending of faxes." *Id.* at 391. AGV Sports alleged that Protus sent 882 such faxes over the course of three years. *Id.* at 390. The MTCPA's remedies included a provision allowing "'[d]amages in the amount of the greater of: (i) $500 for each violation; or (ii) [a]ctual damages sustained as a result of the violation.'" *Id.* at 398 (emphasis

---

[3] Before *Crowder*, a federal district court judge forewent certification to this Court and, declining to find that the Maryland Consumer Protection Act ("CPA") is a statutory specialty under Maryland law, did not apply a twelve-year limitations period. *Attorney Gen. of Md. v. Dickson*, 717 F. Supp. 1090, 1104 (D. Md. 1989). The district judge distinguished "specialty," which he defined as "a legal instrument under seal," from "specialty by statute," which he defined as "a seldom-used term denoting a legislatively-created cause of action that did not exist at common law." *Id.* The district judge stated that "no published Maryland case in almost 50 years . . . has found any statutory liability to be a specialty" and that "those cases would not be followed today by the Court of Appeals of Maryland." *Id.* Although the district judge in *Dickson* reached the right result, as this Court would later agree that the CPA is *not* an "other specialty," *Greene Tree Home Owners Ass'n, Inc. v. Greene Tree Assocs.*, 358 Md. 453, 455 (2000), the reasoning and ultimate decision of the district judge in *Dickson* clearly does not apply. The district judge did not employ the yet-to-be-written *Crowder* test; moreover, *Crowder* borrowed from the very cases the *Dickson* court opined this Court would not follow, *compare Dickson*, 717 F. Supp. at 1104 (first citing *Sterling v. Reecher*, 176 Md. 567 (1939); and then citing *Mattare v. Cunningham*, 148 Md. 309 (1925)), *with Crowder*, 409 Md. at 70 (relying on the "guidance in *Mattare*, *Greene Tree*, and the intervening cases" in articulating the *Crowder* test).

removed) (quoting the MTCPA).  Black's Law Dictionary told us that "[a]ctual damages, by definition, are not liquidated or for a fixed sum."  *Id.* at 398.  The Court named several costs that would not be "readily ascertainable," such as decreased employee productivity caused by the review of the junk faxes as well as losses of paper and ink used to print them.  *Id.* at 399.  Therefore, the Court held that the MTCPA is not an "other specialty" under CJP § 5-102(a)(6) and the twelve-year limitations period does not apply.  *Id.* at 389.

Four years later, we were asked whether the Maryland Finder's Fee Act ("FFA") is an "other specialty."[4]  *NVR Mortg. Fin., Inc. v. Carlsen*, 439 Md. at 429.  The FFA requires an agreement between a mortgage broker and a borrower that discloses the broker's finder's fee and contains a representation that the broker is not the actual lender.  *Id.* at 431.  The agreement must be made before the broker provides services and be signed by both parties.  *Id.* at 431-32.  In addition, a copy must be provided to the borrower.  *Id.*  We held that the FFA is not an "other specialty," failing the first *Crowder* prong because the duty sought to be enforced was the "common law duty to 'disclose . . . all facts or information which may be relevant or material in influencing the judgment or action of the [borrower] in the matter.'"  *Id.* at 433-34 (quoting *St. Paul at Chase Corp. v. Mfrs. Life Ins. Co.*, 262 Md. 192, 215-16, *cert. denied*, 404 U.S. 857 (1971)).  The FFA's disclosure requirements, "rather than having been created solely by the statute," merely "prescribe[] the manner in which a common law duty must be fulfilled."  *Id.* at 435-36.  We addressed an argument

---

[4] The certified question in *Carlsen* asked about an alleged violation of the Maryland Finder's Fee Act, appearing at CL §§ 12-801 to 12-809; this Court reformulated the question to examine a violation of only one provision, *Carlsen*, 439 Md. at 429, specifically regulating the *charging* of a finder's fee, § 12-805(d).

that the withdrawal of a proposed bill, which would have added a three-year limitations period to the FFA, indicated that the FFA was meant to be an "other specialty." *Id.* at 438. We called such legislative action a "'rather weak reed upon which to lean in ascertaining [the General Assembly's] intent.'" *Id.* (quoting *City of Balt. Dev. Corp. v. Carmel Realty Assocs.*, 395 Md. 299, 329 (2006)).

*The MCLL under the* Crowder *Test*

The parties agree that the second prong of the *Crowder* test—whether the remedy pursued is authorized solely by the statute and does not otherwise exist at common law—is not at issue, so we examine the MCLL and its licensing requirement under the first and third prongs.

*Prong one: the licensing duty is created solely by statute and does not otherwise exist as a matter of common law*

Appellee Spicer[5] argues that the licensing requirement is not created and imposed solely by the MCLL. Appellee does not dispute that the common law contained no licensing requirement but sees it as a means of enforcing the "common law right of redress by a party to a usurious loan," recognized "[f]or centuries [by] Maryland courts."[6]

---

[5] As explained *supra* note 1, defendant Murdy was dismissed, evidently leaving only Spicer as Appellee here.

[6] Appellee also posits that an action under CL § 12-302 is a "money had and received [common law] count," *Benson v. State*, 389 Md. 615, 653 (2005), but that argument fails because here Appellee did not "receive[] the money as a result of a mistake of law or fact and [without] a right to it," *id.* Although it may be true that Appellee collected money "'which, in equity and good conscience, he ought not to be allowed to retain,'" *id.* at 652-53 (citation omitted), the reason derives from the statutory licensing requirement and not common law usury prohibitions.

Appellee's view is too narrow. *Crowder* tells us that the MCLL's many statutory protections—a licensing requirement; limitations on the amount of interest, fees, points, commissions, and other charges; and disclosure requirements, *Crowder*, 409 Md. at 58— were "created and imposed solely by the [statute]," *id.* at 72, not by common law.

At oral argument, Appellee asserted that the secondary mortgages studied in *Crowder* are different from small loans. But it is difficult to comprehend why we should distinguish between borrowing to put an addition onto a house and borrowing to buy a car, or why this Court should accept Appellee's generalization that the small loan borrower is necessarily "harder up" than a secondary mortgagor. Borrowers under both statutes require protections when they seek small loans, whether for consumer or household purposes. These attempts to distinguish the SMLL from the MCLL seem to us more superficial than substantive.

Our canons of statutory interpretation also caution us against accepting Appellee's invitation to read CL § 12-302 as a mere vehicle for regulating usury, thus "prescrib[ing] the manner in which a common law duty must be fulfilled," *Carlsen*, 439 Md. at 436, "rather than having been created solely by the statute," *id.* at 435. First, the licensing requirement is silent as to usury. CL § 12-302. Second, the legislature has given other reasons for its regulation of small consumer loans. Both parties quoted for us the preamble to the 1918 statute, which calls for "proper supervision" of small loans because "there is no regulation or provision[] of law which has proved effective for the protection of such borrowers and for the punishment of usurious money lenders." Ch. 88, 1918 Md. Laws at 198. We must read "'a statute, if reasonably possible, . . . so that no word, clause, sentence,

10

or phrase is rendered surplusage, superfluous, meaningless, or nugatory.'" *Donlon v. Montgomery Cty. Pub. Schs.*, 460 Md. 62, 77 (2018) (quoting *Bd. of Educ. of Garrett Cty. v. Lendo*, 295 Md. 55, 63 (1982)). The 1918 Act's preamble recognizes protection of borrowers as separate from punishing against usury. Even if those are deemed two sides of the same coin, the 1945 statute's purpose of providing "*further* remedial legislation," Art. 11 § 163 (emphasis added), shows that, as Appellants argue, the MCLL and its predecessors go beyond what had previously existed, including the common law.

Therefore, we hold that the MCLL's licensing requirement—coming as part of a statutory scheme that, like the SMLL, governs licensing, the amount of a loan, misleading advertising, discrimination, maximum interest rates, permissible fees, attorney's fees, and lender's disclosure duties, §§ 12-301 to 12-317—was "created and imposed solely" by statute and not by common law.

*Prong three: the MCLL's damages, by applying clear statutory criteria, are readily ascertainable*

Appellee argues that the damages are not "liquidated, fixed, or, by applying clear statutory criteria, . . . readily ascertainable." Appellee bases this argument on the MCLL's remedy that a "person who is neither a licensee nor exempt from licensing may not receive or retain any principal, interest, or *other compensation* with respect to any loan that is unenforceable under this subsection."[7] CL § 12-314(b)(2) (emphasis added). Appellee

---

[7] Changes to CL § 12-314 become effective January 1, 2019. Even if its provisions affected this suit, which they do not, the forthcoming analysis would not change. A loan that "purports to be made under this subtitle" is still "void and unenforceable if . . . [a] person who is not licensed under or exempt from the licensing requirements under Title

11

contends that "other compensation," *id.*, "may include not only points charged at closing, loan processing fees or other charges assessed at closing, which are readily determined, but also the innumerable other forms of remuneration," which are not determined so readily. Appellee offers as examples a loan sold by the original lender to another, loans with variable interest rates, and bonuses—including non-monetary bonuses like trips, air fare, hotels, and rounds of golf—awarded to loan originators by investors or employers. Appellants respond by saying that "fact finding with respect to 'statutory specialties' damages is a common occurrence."

We agree with Appellants. The need for fact-finding does not preclude ready ascertainment. *Crowder*, 409 Md. at 72 n.4 ("other[ issues] may well be resolved based on the relevant documents"). Appellants correctly identify how the fact-finder will "resolve" liability "based on the relevant documents": "all amounts paid by Appellants Price and Chovan to Appellee Spicer on each MCLL loan." Appellee may be right that the "interest, costs, or other charges," CL § 12-413, recoverable by a borrower under the SMLL are more *easily* ascertainable—documented on forms required by the United States Department of Housing and Urban Development—but that does not mean that MCLL borrowers' payments are not *readily* ascertainable. *See Crowder*, 409 Md. at 71 ("Relative ease of proof may be common in some statutory specialties, but it is not a requisite element."). Even variable interest payments will be readily ascertainable by information in possession

---

11, Subtitle 2 of the Financial Institutions Article made the loan." CL § 12-314(b)(1)(i)3 (Supp. 2018). The statute still specifies the remedy that "[a] person may not receive or retain any principal, interest, fees, or other compensation with respect to any loan that is void and unenforceable under this subsection." *Id.* § 12-314(b)(2).

of both lender and borrower, such as bank statements or cashed checks; computing interest payments is a far cry from calculating wear on an ink cartridge or the amount of time employees being paid at different rates spent reading unsolicited faxes, *see AGV Sports*, 417 Md. at 399. Appellee's examples of transferred loans or bonuses paid to the loan originator are a red herring: those forms of "compensation" were not paid by the borrower, do not concern the borrower, and would not be sought by the borrower in a lawsuit; someone other than the borrower would potentially sue to recover those items as damages. Therefore, the third *Crowder* element is satisfied by the MCLL.

*The Legislature's Timing*

Appellee contends that the MCLL's enactment without a specific limitations period in 1975, *after* the enactment in 1973 of CJP § 5-101's three-year "blanket" limitations period, indicates the General Assembly's intent that CJP § 5-101 applies rather than CJP § 5-102. This contention is flawed for several reasons. First, CJP § 5-102 was also passed in 1973, and its predecessor statute dates to 1924, *Crowder*, 409 Md. at 67 ("the predecessor statute to CJP § 5-102, codified as Art. 57, § 3 of the 1924 Code, provided a 12-year period of limitations for a[ny] . . . '*other specialty whatsoever*'"). The same logic, therefore, applies to the MCLL's relationship with both limitations statutes. Second, the MCLL was not a new law in 1975, but previously existed in a different place in the Maryland Code and under a different name. Therefore, the language in *Carlsen* about statutes passed after CJP § 5-101 is inapposite. *See* 439 Md. at 440 ("It is reasonable to infer that the General Assembly intended CJP § 5-101 to generally apply to alleged violations of statutes that the General Assembly enacted after enacting CJP § 5-101,

13

whereas CJP § 5-102(a)(6) . . . would apply only to alleged violations of statutes that the General Assembly had enacted before enacting CJP § 5-101.").  Third, *Carlsen* observed that the order of statutes' passage is only "evidence" of the General Assembly's intent, *id.* at 439, not that such evidence is dispositive, or even a weighty consideration.

## IV.

## Conclusion

For the foregoing reasons, we hold that the MCLL's licensing requirement is an "other specialty" within the meaning of CJP § 5-102(a)(6) and that a claim brought on it is entitled to a twelve-year limitations period.  We therefore answer "yes" to the question certified to us by the District Court.

**CERTIFIED QUESTION OF LAW ANSWERED AS SET FORTH ABOVE. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

14