*Michele Williams v. Morgan State University, et al.*, Misc. No. 9, September Term, 2022. Opinion by Eaves, J.

**SOVEREIGN IMMUNITY — WAIVER — MARYLAND TORT CLAIMS ACT — STATUTORY INTERPRETATION**

The United States Court of Appeals for the Fourth Circuit certified a question of law to the Supreme Court of Maryland. The Court reformulated the question as follows: Does Maryland's waiver of sovereign immunity for a tort action under the Maryland Tort Claims Act extend to federal statutory claims? The Court answered the certified question in the negative.

United States Court of Appeals for the Fourth Circuit
Case No.: 21-1918
Argued: February 2, 2023

IN THE SUPREME COURT
OF MARYLAND*

---

Misc. No. 9
September Term, 2022

---

MICHELE WILLIAMS

v.

MORGAN STATE UNIVERSITY, ET AL.

---

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

---

Opinion by Eaves, J.

---

Filed: August 14, 2023

* At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

The doctrine of sovereign immunity is an "ancient" concept.[1] It is the long-established view that a sovereign, such as a state, is "infallible,"[2] and, thus, immune from suit "absent the State's consent."[3] The General Assembly provided such consent in the Maryland Tort Claims Act ("MTCA"), Md. Code Ann. State Gov't ("SG") (1984, 2021 Repl. Vol., 2022 Supp.) § 12-104(a)(1), which waives the State's immunity as to a "tort action in a court of the State[.]" In this case, we must determine whether the MTCA's waiver of sovereign immunity as to "a tort action" extends to federal statutory claims.

Although this case comes to us as a certified question from the United States Court of Appeals for the Fourth Circuit, it originated in the Circuit Court for Baltimore City. Michele Williams, Appellant, filed a complaint against her former employer, Morgan State University ("MSU"), and her former supervisor, Dean DeWayne Wickham, in his personal capacity (collectively "Appellees") regarding her termination from the University. In an amended complaint, Appellant added claims alleging retaliation in violation of the National Defense Authorization Act ("NDAA"), 41 U.S.C. § 4712, and the American Recovery and

---

[1] *United States v. Nordic Vil., Inc.*, 503 U.S. 30, 42 (1992) (Stevens, J., dissenting) (noting that the doctrine has an "ancient lineage"); *see Godwin v. Cnty. Comm'rs of St. Mary's Cnty.*, 256 Md. 326, 330–31 (1970) ("No suit or action, even in civil matters can be brought against the king, because no court can have jurisdiction over him. Authority to try would be in vain, without authority to redress; the sentence of a court would be contemptible, where it could not enforce execution, and who shall command the king? His person is sacred, even though his measures be tyrannical and arbitrary, for no jurisdiction can try him in a criminal manner, much less condemn him to punishment." (quoting Browne's Blackstone's Commentaries at 77)).

[2] *ARA Health Servs., Inc. v. Dep't of Pub. Safety & Corr. Servs.*, 344 Md. 85, 91 (1996).

[3] *Id.* at 92 (citing *Dep't of Nat. Res. v. Welsh*, 308 Md. 54, 58–59 (1986)).

Reinvestment Act ("ARRA"), Pub. L. No. 111-5, § 1553, 123 Stat. 115, 297 (2009). Appellees timely removed the suit to the United States District Court for the District of Maryland.

As to her federal claims against MSU, Appellant alleges that her termination by MSU was impermissible retaliation for disclosing that the University, primarily Dean Wickham, had overstated "the University's operating costs to the Corporation for Public Broadcasting and the United States Department of Education and . . . attempted to influence the 2016 Baltimore mayoral race by violating FCC regulation[s]." Eventually, the Fourth Circuit certified a question of law to this Court, which we have slightly rephrased: Does Maryland's waiver of sovereign immunity for "a tort action" under the MTCA extend to federal statutory claims?[4] For the reasons discussed below, we hold that the General Assembly did not waive the State's sovereign immunity for such claims.

# I
## JURISDICTION AND STANDARD OF REVIEW

The General Assembly has granted this Court the authority to "answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State." Md. Code Ann., Cts. & Jud.

---

[4] The Fourth Circuit's original question was: "Does the waiver of sovereign immunity for 'tort action[s]' under the Maryland Tort Claims Act, Md. Code Ann., State Gov't § 12-104(a)(1), extend to federal statutory claims, including those where the alleged harm is wrongful termination in retaliation for whistleblowing?" As acknowledged by the Fourth Circuit, however, this Court has the power to "reformulate [the] question of law certified to it." Md. Code Ann., Cts. & Jud. Proc. ("CJP") (1974, 2020 Repl. Vol.) § 12-604.

2

Proc. ("CJP") (1974, 2020 Repl. Vol.) § 12-603. The certifying court must "issue a certification order and forward it" to this Court. *Id.* § 12-605. That certification order must contain, among other things, the question of law to be answered and the relevant facts. *Id.* § 12-606. This Court accepted the Fourth Circuit's certified question of law. *See id.* § 12-607.

When answering a certified question, "this Court accepts the facts provided by the certifying court[,]" *United Bank v. Buckingham*, 472 Md. 407, 413 (2021) (citing *Price v. Murdy*, 462 Md. 145, 147 (2018)), and cabins its "legal analysis and final determinations of Maryland law to the question[] certified[,]" *Dickson v. United States*, 478 Md. 255, 260 (2022) (citing *Buckingham*, 472 Md. at 421). Because certified questions can encompass only legal questions, "our analysis necessarily is *de novo*." *Id.*

## II
## BACKGROUND

To place this certified question in proper context, we first discuss the facts as provided by the Fourth Circuit, the relevant procedural history, and the MTCA.

### A. *Factual Background*

Appellant worked from 2014 to 2017 as MSU's Director of Broadcast Operations where she oversaw and managed MSU's radio and television stations. Before Baltimore City's 2016 mayoral election, Appellant organized a debate among all candidates. Then-incumbent Catherine Pugh, the Democratic Party candidate, was unable to attend the debate, so, according to Appellant, Dean Wickham instructed Appellant to cancel the debate at Mayor Pugh's behest. Adhering to prior guidance that candidates be provided

3

on-air interviews to compensate for cancelled debate time, Appellant granted requests for interviews from Republican and Green Party candidates. Dean Wickham disapproved of Appellant's grants for interviews, stating that things would "not end well for her." Appellant complained to MSU that she believed Dean Wickham's actions violated various federal and state laws and regulations. Appellant also voiced concern to Dean Wickham and other MSU leaders that she believed that MSU intentionally was inflating expenses in reports submitted to state and federal agencies to secure larger grants. Appellant believes that her complaints resulted in her improper termination in 2017.

## B.    *Procedural History*

Appellant filed a complaint in the Circuit Court for Baltimore City against MSU for wrongful termination in violation of a clear mandate of public policy (Count I), and against Dean Wickham for defamation (Count II). The operative first amended complaint, filed in December 2018, sought to "recover civil damages under Maryland common law torts and federal law" by adding to the initial complaint's common law tort counts a claim against both defendants for retaliation under the NDAA and the ARRA (Count III).[5] Appellees removed the suit to the United States District Court for the District of Maryland, which dismissed the action with prejudice.

Appellant appealed, and the Fourth Circuit vacated the district court's order dismissing Appellant's federal statutory claims and remanded the case to the district court

---

[5] Appellant's additional claim against Appellees was for discrimination and retaliation in violation of 42 U.S.C. § 1981 (Count IV), but she later withdrew that allegation.

4

to address whether Maryland has waived state sovereign immunity against federal whistleblower claims by enacting the MTCA. Following remand and supplemental briefing by the parties, on July 26, 2021, the district court granted Appellees' renewed motion to dismiss on the ground that the MTCA does not waive the State's sovereign immunity with respect to such claims. Appellant again appealed from the district court's judgment dismissing her action. After briefing and oral argument, the Fourth Circuit certified the question of law to this Court, which we accepted.

## C. *The MTCA's Statutory Framework*

The MTCA is codified under the State Government Article as Subtitle 1 of Title 12. "The MTCA was enacted in 1981 as a waiver of the State's sovereign immunity for tortious acts or omissions committed within the scope of the public duties of 'state personnel' and committed without malice or gross negligence." *Barbre v. Pope*, 402 Md. 157, 173 (2007). Under the MTCA, a party injured by the negligent act or omission of a state officer or employee within the scope of the officer's or employee's public duties may obtain compensation for that injury from the State.

SG § 12-104 states in pertinent part:

(a)(1) Subject to the exclusions and limitations in this subtitle and notwithstanding any other provision of the law, *the immunity of the State and its units is waived as to a tort action, in a court of the State*, to the extent provided under paragraph (2) of this subsection.

(2)(i) Except as provided in subparagraph (ii) of this paragraph, the liability of the state and its units may not exceed $400,000 to a single claimant for injuries arising from a single incident or occurrence.

\*     \*     \*

5

(b) Immunity is not waived under this section as described under § 5-522(a) of the Courts and Judicial Proceedings Article.

(Emphasis added). By its plain terms, SG § 12-104(b) provides that the scope of the State's waiver of sovereign immunity is established by the interplay between subsection (a) and CJP § 5-522(a). That section provides that the State's immunity is not waived for, among other things, "[a]ny tortious act or omission of State personnel that: (i) [i]s not within the scope of the public duties of the State personnel; or (ii) [i]s made with malice or gross negligence[.]" CJP § 5-522(a)(4).

The other central component of the MTCA, in addition to its *waiver* of the State's sovereign immunity for tortious acts or omissions by State personnel, is a *corresponding immunity* from suit and from liability in tort for State personnel. *See* SG § 12-105 ("State personnel shall have the immunity from liability described under § 5-522(b) of the Courts and Judicial Proceedings Article."); CJP § 5-522(b) (providing that State Personnel as defined under the MTCA are "immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity" under SG § 12-104, "even if the damages exceed the limits of that waiver.").

The Legislature has created a comprehensive statutory scheme, where the waiver of the State's sovereign immunity for tort actions corresponds precisely with immunity from suit and liability for State personnel. In lieu of recovery from the negligent State personnel, the party may obtain compensation for that injury from the State. *Barbre*, 402 Md. at 173–

6

74. "In other words, liability of the State and liability of individual State personnel are mutually exclusive. If the State is liable, the individual is immune; if the individual is liable, the State is immune." *Newell v. Runnels*, 407 Md. 578, 635 (2009). "In effect, the MTCA substitutes the State for the State personnel as the appropriate defendant in such an action." *Rodriguez v. Cooper*, 458 Md. 425, 451–52 (2018).

The MTCA also contains certain limitations on the scope of the waiver of the State's sovereign immunity beyond those that are dependent on the actions of the State personnel. Among those limitations are that the State has not waived immunity from claims for punitive damages or pre-judgment interest; its liability may not exceed $400,000 to a single claimant for injuries from a single incident or occurrence; and the MTCA does not waive any right or defense of the State, including any defense that is available under the Eleventh Amendment. SG §§ 12-103(2), 12-104(a)(2), (b); CJP § 5-522(a).

### III
### ANALYSIS

We hold today that the MTCA does not waive the State's sovereign immunity for federal statutory claims. In deciding this issue, we employ our traditional canons of statutory interpretation. We demonstrate how the MTCA's plain language, statutory framework, and historical amendments reflect that the General Assembly did not intend to include federal statutory claims under the MTCA's limited waiver. We then illustrate along the way how that holding comports with the purposes of the MTCA and why

7

adopting Appellant's interpretation would produce results at odds with the MTCA's framework and purpose.

## A.    *The Parties' Contentions*

Appellant alleges that the term "tort action" as used in SG § 12-104 is broad and was intended to include all federal statutory claims. She asserts that we must—in accordance with the MTCA's mandate—construe the MTCA broadly to ensure a remedy for the injured party, which necessitates holding that the General Assembly waived the State's sovereign immunity for federal statutory claims. Appellant argues that, in other contexts, this Court has held that a "tort" encompasses all civil wrongs, including those based in statute, not just those recognized at common law. Appellant further argues that the historical amendments to the MTCA evince the General Assembly's intent to include federal statutory claims under "a tort action."[6]

For their part, Appellees argue that neither the statutory text nor the legislative history of the MTCA indicates that the General Assembly intended to waive the State's immunity for federal statutory claims. Appellees also assert that the phrase "tort action"

___

[6] Appellant also presents two ancillary arguments: (1) excluding from the MTCA's waiver of sovereign immunity federal statutory claims analogous to state law claims that *would* qualify under the MTCA's waiver would violate the Supremacy Clause of the United States Constitution by discriminating against an individual's federal rights and (2) the phrase "a tort action" includes statutory employment claims. The first argument goes beyond the scope of this certified question. Moreover, the Supreme Court of the United States, in rejecting a claim of "discriminat[ion] against federal rights by claiming sovereign immunity from" a federal statutory claim, already has held that if a state "has chosen to consent to certain classes of suits while maintaining its immunity from others, it has done no more than exercise a privilege of sovereignty concomitant to its constitutional immunity from suit." *Alden v. Maine*, 527 U.S. 706, 758 (1999). Given our holding that the MTCA's waiver does not include federal statutory claims, we need not address the second argument.

8

must be read within the overall context of the State's immunity waiver provisions and corresponding grant of immunity provisions for State personnel, which work in tandem. Appellees assert that it would be illogical for the State to have waived their immunity for federal statutory claims under the MTCA because it could not provide a corresponding grant of immunity to State personnel.

**B.    *Discussion***

There is no question that MSU is an instrumentality of the State, sharing in its sovereign immunity. *See* Md. Code Ann., Educ. (1978, 2022 Repl. Vol.) § 14-101(a)(2) (noting that MSU "is an instrumentality of the State and a public corporation"); *Proctor v. Washington Metro. Area Trans. Auth.*, 412 Md. 691, 709 (2010) (noting that the State's sovereign immunity "is applicable not only to the State itself, but also to its agencies and instrumentalities, unless the General Assembly has waived the immunity either directly or by necessary implication" (quoting *Katz v. Washington Suburban Sanitary Comm'n*, 284 Md. 503, 507–08 (1979))). Answering the certified question of law from the Fourth Circuit is an exercise in statutory interpretation, so we turn next to the principles used in such an exercise.

### 1. Canons of Statutory Interpretation: Generally and for Waivers of Sovereign Immunity

In this case, we must determine whether the MTCA's waiver of sovereign immunity for a "tort action" includes federal statutory claims. As we recently stated:

> Pursuant to the well-established principles of statutory construction, our goal is to ascertain and effectuate the actual intent of the General Assembly. We first examine the plain meaning of the statutory language and, if the language is unambiguous and clearly consistent with the statute's apparent purpose,

9

> our inquiry generally ceases at that point and we apply the statute as written. In other words, we interpret the plain meaning of a statute to give effect to the unambiguous language (if, indeed, the language is unambiguous) and need not resort to a review of the legislative history.

*Thornton Mellon, LLC v. Adrienne Dennis Exempt Trust*, 478 Md. 280, 313–14 (2022) (citations and quotation marks omitted). When tasked with interpreting one section of a larger statutory scheme, we avoid interpreting that section in isolation; instead, we "analyze the statutory scheme as a whole considering the 'purpose, aim, or policy of the enacting body[.]'" *Proctor*, 412 Md. at 714 (quoting *Ray v. State*, 410 Md. 384, 405 (2009)). Throughout this process, we are mindful that a statute "must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *Comptroller of Md. v. FC-GEN Operations Invs. LLC*, 482 Md. 343, 380 (2022) (quoting *Wheeling v. Selene Fin. LP*, 473 Md. 356, 377 (2021)).

When interpreting waivers of the State's immunity, we employ the "traditional rules of statutory interpretation, remaining mindful of the policies underlying governmental immunity." *Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert*, 409 Md. 200, 214 (2009). Those policies are to "protect[] the State from burdensome interference with its governmental functions and preserve its control over State agencies and funds." *Id.* at 211 (quoting *Katz*, 284 Md. at 507). Thus, we "strictly construe[]" any waiver of the State's immunity "in favor of the sovereign[,]" *id.* at 212, because "dilution of the doctrine [of sovereign immunity] should not be accomplished by 'judicial fiat[,]'" *id.* (quoting *ARA Health Servs., Inc. v. Dep't of Pub. Safety & Corr. Servs.*, 344 Md. 85, 92 (1996)). We recently reaffirmed this long-standing principle when we stated that "waivers of sovereign immunity, which

10

are in derogation of the common law, are strictly construed in favor of the State." *Brawner Builders, Inc. v. State Highway Admin.*, 476 Md. 15, 32 (2021) (citing *Proctor*, 412 Md. at 709; *Zimmer-Rubert*, 409 Md. at 212).

### 2. The Plain Language and Statutory Context

Starting with the plain text, the MTCA does not define the term "tort action."  In support of her position that "tort action," as used in the MTCA, encompasses federal statutory claims, Appellant contends that three decisions of this Court "broaden[ed] the definition of 'tort'" beyond common law tort actions:  *Green v. N.B.S., Inc.*, 409 Md. 528 (2009); *Espina v. Jackson*, 442 Md. 311 (2015); and *Lee v. Cline*, 384 Md. 245 (2004).[7] None of those decisions supports Appellant's contention that the MTCA waiver extends generally even to state statutory claims, much less federal statutory claims.

In *Green*, this Court considered whether to apply Maryland's cap on noneconomic damages set forth in CJP § 11-108 to damages for a violation of the Maryland Consumer

---

[7] At oral argument, Appellant directly claimed support from our decision in *Hansen v. City of Laurel*, 420 Md. 670 (2011), and, in her brief, she cites to unreported decisions of other courts that discuss that decision.  *Hansen*, like the other cases on which Appellant relies, does not bolster her position.  There, we held that a plaintiff bringing a claim for employment discrimination against a local government entity must provide notice as required by the Local Government Tort Claims Act ("LGTCA") and plead compliance with that requirement.  420 Md. at 672–73.  Our decision in *Hansen* concerned compliance with notice and pleading requirements.  It did not address waiver or the meaning of "tort action" or any similar phrase.  Indeed, the notice requirement at issue in *Hansen* requires a claimant to provide notice of any "action for unliquidated damages," not just tort actions, "brought against a local government or its employees."  *Id.* at 676 n.4 (quoting the then-applicable version of CJP § 5-304(b)(1)).  We began our discussion by noting the "longstanding principle of Maryland jurisprudence that the LGTCA notice provision is a condition precedent to maintaining an action"—not just a tort action—"directly against a local government or its employees."  *Id.* at 682.  *Hansen*, therefore, is inapposite.

11

Protection Act ("MCPA"). 409 Md. at 541–42. The plaintiff in that case had brought claims for common law negligence and violation of the MCPA arising from exposure to lead-based paint. *Id.* at 534. The jury awarded damages that were not differentiated between those two claims. *Id.* at 535. Affirming the Appellate Court of Maryland,[8] we held that those damages were subject to the cap imposed by CJP § 11-108 on "damages for personal injury" applicable "to each direct victim of tortious conduct[.]" *Id.* at 539–40. In our analysis, we quoted with approval several portions of the Appellate Court's opinion. In one of those portions, the Appellate Court rejected the plaintiff's contention that the cap could not apply because the MCPA "is a statutory cause of action and not a tort." *Id.* at 542. The Appellate Court observed that *Black's Law Dictionary* defined "tort" in part as a "civil wrong for which a remedy may be obtained," but did not limit it to "wrongs that were recognized as a civil wrong at common law." *Id.* at 542 (quoting *Green v. N.B.S., Inc.*, 180 Md. App. 639, 646–47 (2008)). In another portion, which we quoted immediately before stating our agreement with the Appellate Court's analysis, the intermediate appellate court reviewed the history of CJP § 11-108 and concluded that the General Assembly intended it to apply to "all actions for personal injuries," regardless of their legal basis. *Id.* at 544 (quoting *Green*, 180 Md. App. at 659–60). Our holding in *Green*, however, was not that the plaintiff's MCPA claim was a "tort action," but that it was "a personal injury action" to which CJP § 11-108 applied. *Id.* at 541.

---

[8] At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

12

*Espina* fares no better. The sole portion of our opinion in *Espina* on which Ms. Williams relies is its brief discussion of our opinion in *Green*. The issue in *Espina* was whether the General Assembly exceeded its authority when it capped the exposure of local governments to constitutional torts under the Local Government Tort Claims Act ("LGTCA"). 442 Md. at 316–17. *Espina* did not concern either the MTCA specifically or statutory claims in general. Nonetheless, in reviewing caselaw shedding light on the meaning of the phrase "tortious acts or omissions" in the LGTCA, we discussed our opinion and holding in *Green*. *Espina* is not otherwise relevant to the issues presented in this case.

In *Lee*, we concluded that the MTCA applies to State constitutional torts. 384 Md. at 255. Our opinion in *Lee* does not even mention statutory claims. Rather, that opinion was based on a straightforward interpretation of the plain text of the MTCA's application to "a tort action," which we concluded "plainly appears to cover intentional torts and constitutional torts as long as they were committed within the scope of state employment and without malice or gross negligence." *Id.* at 256. Although it is certainly correct that our opinion in *Lee* stands for the proposition that "tort action" in the MTCA is not limited only to common law torts, *see, e.g.*, *Green*, 409 Md. at 542 (observing that our opinion in *Lee* "at least suggests that the term 'tortious conduct' includes more than conduct that constituted a tort at common law" (quoting *Green*, 180 Md. App. at 649)), it provides no support for Appellant's contention that the phrase extends to statutory claims.

None of the cases on which Appellant relies is apposite. In *Green*, we adopted an analysis that was based primarily on the conclusion that in expanding the scope of the CJP

13

§ 11-108 cap to cover wrongful death actions, the General Assembly had not intended to narrow the statute's application, which previously reached all personal injury actions, so that it was limited only to common law torts. 409 Md. at 543–44. The broad definition of "tort" in *Black's Law Dictionary* was not dispositive. In *Espina*, we briefly discussed our holding in *Green*. And in *Lee*, we considered the application of the MTCA to constitutional torts. None of these cases purported to "broaden[] the definition of 'tort'" either generally for all statutes or for purposes of the MTCA specifically.

There are several textual and contextual reasons that cause us to conclude that the General Assembly did not intend the phrase "tort action" to extend to statutory claims generally, and especially not to federal statutory claims. First, and most notably, the plain text of the MTCA's waiver provision does not contain any indication that it applies to federal statutory claims. As discussed above, we construe waivers of the State's sovereign immunity in favor of retaining that immunity. Given that rule, we would expect the General Assembly to speak plainly if it intended to subject the State to suit under any and all statutes that might exist or be enacted in the future, especially statutes that might be enacted by the United States Congress, a separate legislative body over which the General Assembly exercises no control. There is no express language in the MTCA extending the sovereign immunity waiver to such claims.

Second, this Court has never held that "tort action" or any similar phrase, either as used in the MTCA or in any other statute, applies generally to State statutory claims. As discussed above, our holding in *Green* was premised on our analysis of the General Assembly's intent in enacting, and later amending, CJP § 11-108. That opinion sheds no

14

light on the General Assembly's intent with respect to the scope of the waiver of sovereign immunity under the MTCA. Were we to accept Appellant's interpretation of *Green*, then we would need to conclude that the General Assembly, *sub silentio*, has waived the State's sovereign immunity to claims under the MCPA and all other state statutes that contain a private right of action and sound in tort. To the contrary, our holding in *Green* was limited to the scope of CJP § 11-108.[9]

Third, while the MTCA's waiver is contained in SG § 12-104, we do not construe isolated statutes in a vacuum; rather, we construe the statutory scheme as a whole. *See Proctor*, 412 Md. at 714. As noted above, the General Assembly's waiver of sovereign immunity under the MTCA operates in tandem with the General Assembly's grant of immunity to State Personnel where the State's waiver is triggered. *See* SG § 12-105; CJP § 5-552(b). In other words, where the General Assembly has waived the State's sovereign immunity for tortious conduct in certain situations, it has concomitantly provided immunity to its State personnel for the same conduct. *See Lee*, 384 Md. at 255 (observing that the "immunity granted to [S]tate personnel by the Maryland Tort Claims Act is generally co-extensive with the coverage of the statute"). Indeed, "[t]he purpose of the [MTCA]'s immunity is to insulate state employees generally from tort liability if their actions are

---

[9] Nothing we say in this opinion should be construed as opining on the application of the MTCA to any other *state* statutory claim. We discuss the MTCA as it relates to state statutory claims to both provide broader context and discuss Appellant's contention that our precedent has expanded the phrase "tort action" to encompass *all* federal statutory claims. Because, as we explained above, none of our precedent stands for the proposition that the MTCA applies to *all state* statutory claims, then surely it would be illogical to conclude that it applies to all *federal* statutory claims.

15

within the scope of employment and without malice or gross negligence." *Id.* at 261. That purpose is satisfied for state common law and constitutional torts by substituting the State's liability for that of State personnel who would otherwise be liable. For State statutory claims, however, the imposition and scope of liability is a legislative choice made by the General Assembly. In other words, unlike in the case of common law and constitutional torts, in crafting a State statute containing a private right of action, the General Assembly has the ability to place liability where it chooses. It would be unnecessary to resort to a separate statutory scheme, like the MTCA, to allocate liability for State statutory claims.

Further, unlike State statutory claims, which the General Assembly has the ability to craft as it sees fit, that body has no control over the scope of federal statutory claims and no ability to insulate the State's personnel from individual liability. *See Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 375 (1990) ("The elements of, and the defenses to, a federal cause of action are defined by federal law."); *Sales v. Grant*, 224 F.3d 293, 297–98 (4th Cir. 2000) (holding, specific to a promise of indemnification, that a state "cannot invest government[] officers, sued in their individual capacities, with sovereign immunity that they would not otherwise enjoy"); *see also* U.S. Const., art. VI, cl. 2 ("Th[e] Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land."). Adopting Appellant's expansive definition of "a tort action," thus, would eliminate the General Assembly's exercise of control in defining the scope of the State's liability.

Fourth, when the General Assembly has intended to waive the State's sovereign immunity for purposes of a State statutory claim, it generally has done so directly within the specific statutory scheme at issue. *See* SG §§ 20-601–20-611 (describing unlawful

16

discrimination practices in employment), § 20-903 ("The State, its officers, and its units may not raise sovereign immunity as a defense against an award in an employment discrimination case under this title."); State Pers. & Pens. ("P&P") §§ 5-301–5-314 (laying out the provisions of the Maryland Whistleblower Law, which is under Division I of the State Personnel and Pensions Article), § 14-103 (discussing that the State may not raise sovereign immunity as a defense in any "administrative, arbitration, or judicial proceeding involving an employee grievance or hearing that is held under" "this Division I or a regulation adopted under it" or "a personnel policy or regulation that governs classified employees of . . . [MSU]"). Indeed, we previously have held that when the General Assembly enacts a waiver of the State's immunity within a specific statutory scheme, the MTCA—as a gap-filler provision—does not apply. *See Proctor*, 412 Md. at 712 (interpreting SG § 12-103(1)(i) to evince the General Assembly's intent that the "MTCA serve as a '*gap-filler*' to waive the immunity of State agencies in tort *when no other statute expressly waived the agency's immunity*" (emphases added)).

Furthermore, these statute-specific waivers usually carry with them various procedural or administrative requirements before a claimant can file suit. *See, e.g.*, SG § 20-1013 (allowing an individual to file a civil action pending, among other requirements, that the claimant has "filed a timely administrative charge or complaint under federal, State, or local law alleging an unlawful employment practice"); P&P Title 12 (outlining administrative grievance procedures for State employees). The General Assembly's separate waivers of sovereign immunity for specific State statutory claims makes us

17

especially reticent to conclude that it intended the waiver in the MTCA to apply to statutory claims generally, much less federal statutory claims.

Finally, the General Assembly has demonstrated that it knows how to waive sovereign immunity to federal claims when that is its intent. The MTCA does not include the sort of expansive language the General Assembly has used to do so in other contexts. For example, CJP § 5-518 waives the sovereign immunity of county boards of education from federal claims by stating that "[a] county board of education may not raise the defense of sovereign immunity to *any claim*" of or below a specified dollar amount. (Emphasis added). In *Zimmer-Rubert*, we held that CJP § 5-518(c) waived the board's state sovereign immunity to suits under the federal Age Discrimination in Employment Act and its Eleventh Amendment immunity to suit in federal court. 409 Md. at 203–07, 213–15. In doing so, we held that the phrase "any claim" in § 5-518(c) constituted by its plain language a "broad and unambiguous" waiver of both immunities, contrasting that language with the much narrower language "in a court of the State," which of course is used in the MTCA. *Id.* at 213–15. In short, the phrase "any claims" was so broad that it could not have "preserve[d] the defense of sovereign immunity"; rather, it extended the defense of sovereign immunity to "all claims" up to the specified dollar amount. *Id.* at 215–17. The General Assembly did not use such expansive language in the MTCA.

For the reasons we have discussed above, we conclude that the MTCA's limited waiver of the State's sovereign immunity for "a tort action," does not extend to federal statutory causes of action. Ultimately, we need not decide whether the MTCA waives

18

sovereign immunity generally for state statutory claims that sound in tort.[10] If it does, such a waiver would necessarily be limited to state statutory claims that are not covered by another waiver of sovereign immunity specific to the scheme. *See, e.g.*, *Proctor*, 412 Md. at 720 (stating that the MTCA applies only "when no other preexisting waiver of sovereign immunity exists"). Regardless, based on the plain language of the MTCA and its statutory context, we conclude that it does not extend generally to all federal statutory claims, including to those brought pursuant to the ARRA and the NDAA.[11] As discussed next, our interpretation is also consistent with the statute's purpose and legislative history.

### 3. Purpose and Historical Context

Although we conclude that the text of the MTCA is unambiguous, we note that our interpretation of its waiver provision is consistent with the Act's purpose and historical context. As noted above, the MTCA states that it "shall be construed broadly, to ensure that injured parties have a remedy." SG § 12–102. But a broad construction of the MTCA

---

[10] We recognize that we have previously made statements suggesting that the MTCA did abrogate the State's sovereign immunity with respect to at least some statutory tort claims. *See Lopez v. Md. State Highway Admin.*, 327 Md. 486, 489 (1992) ("When the legislature passed the MTCA and abrogated the State's sovereign immunity, it imposed certain procedural requirements that must be met in order to maintain a common law or *statutory tort claim* against the State." (emphasis added)). But neither party has pointed us to a decision that has held that the MTCA abrogated the State's sovereign immunity with respect to *all* state statutory tort claims.

[11] We do not foreclose the possibility that there might be some federal statutory claim that might be considered a "tort action" for purposes of the MTCA. There is no need to do so here. Instead, we hold only that the MTCA does not generally waive the State's sovereign immunity for federal statutory claims, and that nothing presented to us suggests that claims pursuant to either of the federal statutes at issue in this appeal are exceptions to that general rule.

19

is not necessarily an open invitation for *any* injured party to file a claim. The MTCA constitutes a limited waiver of the State's immunity, and we cannot expand it beyond the words the General Assembly enacted. *See Wheeling*, 473 Md. at 376–77 ("'[W]e neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute 'with forced or subtle interpretations' that limit or extend its application.'" (quoting *Lockshin v. Semsker*, 412 Md. 257, 275 (2010))). "Tort action[s]" does not expressly or by necessary implication encompass federal statutory claims.

The historical context of the MTCA also is instructive. As originally enacted, the MTCA waived the State's immunity for only six specified causes of action.[12] 1981 Md. Laws, Ch. 298 ("S.B. 585") at 1611–12; *see Litz v. Md. Dep't of the Env't*, 446 Md. 254, 279 (2016). Excluded from the State's original waiver of sovereign immunity were punitive damages, prejudgment interest, individual claims in excess of $100,000, an aggregate of claims arising from the same occurrence in excess of $500,000, claims arising out of activities of the State militia during a state of emergency, and any cause of action prohibited by law. S.B. 585 at 1612.

---

[12] Those actions were to recover damages caused by: (1) negligent maintenance or operation of a motor vehicle by a State employee; (2) negligence of a healthcare employee of a state facility or institution or by a doctor, nurse, dentist, or related healthcare personnel employed by the State; (3) patently dangerous condition of a building, structure, or other public improvement owned and controlled by the State; (4) negligent use or maintenance of State property by a State employee; (5) a defective, unsafe, or dangerous condition of any street, alley, sidewalk, or highway owned and controlled by the State if constructive or actual notice of the condition existed; and (6) negligent failure of a State officer or employee to properly supervise an activity at a State park or recreation facility.

Four years later, the General Assembly amended the MTCA and reorganized it as part of the State Government Article. Among the many changes produced by the 1985 amendment, we highlight three. *First*, it eliminated the six categories of torts for which an individual could recover. 1985 Md. Laws, Ch. 538 ("S.B. 380") at 2683–84. Instead, the 1985 amendment expanded the Act's reach to "a tort action[.]" *Id.* at 2683. *Second*, the General Assembly added to the State's original reservation of immunity any tortious act or omission of State personnel that (1) is not conducted within the scope of public duties or (2) is made with malice or gross negligence. *Id.* at 2684. *Third*, the amendment created a new § 12-105, which granted immunity to State employees for acts committed within the scope of their duties and made without malice or gross negligence. *Id.* at 2685.

Between 1986 and 2021, the General Assembly amended the MTCA seven times. None of those amendments have any substantive implications for this case.

The enactment of, and 1985 amendment to, the MTCA displays no intent by the General Assembly to include federal statutory claims under the MTCA's limited waiver of sovereign immunity. As originally enacted, the General Assembly waived the State's sovereign immunity in only six discrete instances. The 1985 amendment abandoned those limitations and extended the State's waiver to "a tort action," but in exchange provided immunity to the State personnel who would otherwise have been liable in such an action. The amendment contains no express indication, as our interpretative canons for immunity waivers require, that "a tort action" extended to federal statutory claims. The purpose

21

paragraph[13] to S.B. 380 states that a goal of the 1985 amendment was to provide "State personnel . . . immun[ity] from *certain tort suits*[.]" S.B. 380 at 2682 (emphasis added). Recalling that the State's and a State employee's liability under the MTCA are mutually exclusive, *see Newell*, 407 Md. at 635, if State employees were granted immunity from only "certain tort suits[,]" then it naturally follows that the State could be liable only in those very same "certain tort suits" where the State employee is immune. Thus, the General Assembly's expansion in 1985 of the scope of the claims covered by the MTCA's waiver to "a tort claim" does not reflect an intention for that expansion to apply to federal statutory claims. If it did, then there would be an incongruity between the State's and a State employee's immunity because, as previously noted, the State cannot immunize State employees against federal causes of action. *See Howlett*, 496 U.S. at 375. To hold as Appellant urges us would, thus, be inconsistent with one of the MTCA's main purposes.

As we have outlined, the General Assembly did not intend for "a tort action" under the MTCA to include federal statutory causes of action. The MTCA's waiver provision contains no express language indicating such a result, and the General Assembly knows how to waive effectively the State's immunity, if that is its goal. Furthermore, extending the scope of the waiver provision to federal statutory claims is inconsistent with both the

---

[13] We discuss the text of S.B. 380's purpose paragraph because, as we stated earlier this term, "this Court may use the bill title, purpose, amendments, and earlier and subsequent litigation as tools in reaching the correct statutory construction." *Elsberry v. Stanley Martin Cos., LLC*, 482 Md. 159, 187 (2022) (citing *Motor Vehicle Admin. v. Lytle*, 374 Md. 37, 57 (2003)). We then noted that "the bill title and purpose *are* part of the statutory text—*not* the legislative history—even if both are used in service of ascertaining the intent of the General Assembly." *Id.*

22

key, neighboring provisions concerning the interplay between the State and a State employee's immunity in certain suits, as well as the MTCA's role as a gap-filler scheme.[14]

## IV
## CONCLUSION

The certified question posed by the Fourth Circuit, and slightly rephrased by us, is whether "a tort action" under the MTCA includes federal statutory claims. Our answer is no. We hold as such because, after assessing the plain language of the MTCA, there is no evidence that the General Assembly intended to include federal statutory claims within the

---

[14] Notably, the 1985 amendment retained the State's immunity for torts of State employees acting outside the scope of their duties or with malice or gross negligence; required that a claimant file a claim with the Treasurer for damages as a condition precedent to filing a suit for damages; limited the waiver to exclude damages arising out of a single claim or occurrence in excess of state insurance coverage for tort claims, as provided in the budget; retained the State's Eleventh Amendment immunity to suit; and added a new provision that the more expanded waiver "[did] not affect other waivers [of sovereign immunity] made by the Legislature in other sections of the Code." *Proctor*, 412 Md. at 713 (citations omitted).

The legislative history of the 1985 amendment also confirms our interpretation. Indeed, testifying in support of the amendment, State Treasurer William S. James explained that the 1985 amendments were intended to "remedy the defects in the Maryland Tort Claims Act by eliminating the six categories" and substituting "broader coverage to the extent that insurance can be purchased with appropriations." "In the event a successful plaintiff obtained a judgment in excess of the policy coverage, the State and its employee would be protected by sovereign immunity. However, upon recommendation of the Attorney General in worthy cases, the Board of Public Works could award additional compensation to injured parties." *See* Sen. Jud. Proc. Comm., Bill Analysis 1 (explaining that while the 1981 law limited the State's waiver to "specified kinds of torts," Senate Bill 380 "waives the State's immunity to liability in all types of tort actions. Under S.B. 380, the State may be sued for damages arising from all types of tortious acts or omissions and not merely from those specified in the statute.").

There ultimately is nothing in the legislative history that supports Appellant's interpretation of the MTCA.

23

scope of the MTCA.  Furthermore, adopting Appellant's approach would produce results that are inconsistent with one of the MTCA's main purposes.

**CERTIFIED QUESTION OF LAW ANSWERED AS SET FORTH ABOVE. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**